JOHN DEAN and AARON DEAN *v.* THOMAS DEAN and others.

1. In cases for specific performance of agreements it is now well settled that if the defendant, by his answer, admits the parol agreement, and insists on the benefit of the statute of frauds, he will be fully entitled to it, notwithstanding such admission. But if he admits the parol agreement, without insisting on the statute, the court will decree a specific performance, upon the ground that the defendant has thereby renounced the benefit of the statute.

2. The same rule of pleading is applicable to cases where a bill is filed to enforce a parol trust.

3. If the court can execute the trust from the admissions made by the answer, so that the complainants are not under the necessity of resorting to *parol proof* of the trust, to entitle them to relief, such admissions will exclude the defendants from the benefit of the statute, if not insisted upon by the answer.

4. A court of equity acts in analogy to the law, in applying the statute of limitations. "As long as there is a continuing and subsisting trust acknowledged or acted on by the parties, the statute does not apply; but if the trustee denies the right of his *cestui que trust*, and the possession of the property becomes *adverse*, lapse of time from that period may constitute a bar in equity." What lapse of time will constitute a bar must depend, in a measure, upon the nature of the trust, the relative situation of the parties to the subject matter of the trust, and other attending circumstances.

5. Where a party has slept over his rights for more than twenty years, and has been grossly negligent in not asserting them, when fitting opportunities have presented; where he has recognized or acquiesced in acts inconsistent with the existence of any trust; and where his conduct has been such as to involve innocent parties, as against them the court will never execute the trust.

This was a bill to enforce a trust. The cause was heard upon the pleadings and proofs. All the material facts disclosed, appear in the opinion of the Chancellor.

*W. H. Luepp* and *P. D. Vroom,* for complainants.

*R. S. Field* and *W. L. Dayton,* for defendants.

THE CHANCELLOR. On the 13th day of October, 1812, the real estate of John Dean, situate in the township of South Brunswick, in the county of Middlesex, was sold by the sheriff, by virtue of an execution at law in his hands. It was struck off to Abram Dean, the brother of John, for the

sum of three thousand two hundred and seventeen dollars and two cents, to whom the sheriff executed a deed.

The bill alleges that the purchase was made under the following agreement, entered into previous to the sale, between Abram and John, "that a re-sale of such real estate, or so much thereof as might be needful, and for that purpose sufficient, to pay and satisfy the debts of said John Dean, and after that, re-convey the residue, if any remained unsold of such real estate, or account for such balance of the proceeds of the sale of the whole, as should remain over and above the payment of the debts of said John Dean." I have stated the alleged agreement, in the language of the bill.

John Dean and Abram Dean are dead. The bill is filed by the two sons of John, his only surviving heirs, and who claim the benefit of the trust also, as devisees of their father. The only defendant who has any knowledge of the transaction, is Thomas Dean, the only surviving son of Abram. He and his sister Mary hold, as devisees of their father, a portion of the land, the subject of this controversy. Of the other defendants, three of them are minors, and all of the defendants have an interest, or have had an interest which they have disposed of, in the said land, through Thomas Dean, a deceased son of Abram. All of the defendants have united in an answer to the bill. The statements in the answer, of importance, are made by Thomas; the others affirming their belief that such statements are true.

The defendants admit that the purchase was made by Abram Dean, under the following circumstances and agreement: The property being advertised for sale by the sheriff, John applied to his brother Abram, and proposed that Abram should become the purchaser at the sheriff's sale, and that Mary Dean, the wife of John, should join in a conveyance, by which her right of dower should be barred and extinguished; and that Abram, thus having a clear title, free from all encumbrance of dower, might be able to sell the said real estate for much more than he would be obliged to pay for it, subject to such encumbrance, and that out of this

surplus he might make some provision for the support and assistance of his brother Thomas.

Before looking at other facts of the case, we have enough before us to dispose of an objection, which the defendants interpose, *in limine*, to any right of the complainants to relief. It is insisted, on behalf of the defendants, that it is a trust or confidence of lands, not manifested and proved by any writings, which the complainants are seeking to enforce. Against the relief sought, the defendants claim the benefit of the statute for the prevention of frauds and perjuries.

Are the defendants entitled to the benefit of the statute? They have not pleaded the statute, and it was not necessary they should do so. But, not having pleaded it, are they entitled to its benefit, unless they claim it by their answer?

In cases for specific performance of agreements, " it is now well settled that if the defendant should, by his answer, admit the parol agreement, and should insist upon the benefit of the statute, he will be fully entitled to it, notwithstanding such admission. But if he admits the parol agreement, without insisting on the statute, the court will decree a specific performance, upon the ground that the defendant has thereby renounced the benefit of the statute." *Story's Eq. P.*, § 763. There is no good reason why the same rules of pleading should not be applicable to cases where a bill is filed to enforce a parol trust. In either case, a naked plea may not be sufficient. If any special matters are set up in the bill, which, if true, would avoid the statute, the plea must contain averments negativing such special matter, and the answer, in support of the plea, must contain a full discovery of the matters set up in avoidance of the bar. If the answer denies the agreement of which specific performance is sought, or denies the trust, it is not necessary to claim in the answer, the benefit of the statute, and for this reason : when the complainant comes to prove his case, he is obliged to resort to parol evidence for the purpose, and such evidence is inadmissible. The reason why the court will execute a parol trust admitted by the answer, is because

it takes the answer as the writing by which the trust, in the language of the statute, " is manifested and proved."

But it is said, for the defendants, that the answer denies the trust, and that they are, therefore, entitled to the benefit of the statute. Is there such a denial of the trust by the answer? The true test is this: if the court can execute the trust from the admissions made by the answer, so that the complainants are not under the necessity of resorting to parol proof of the trust, to entitle them to relief, such admissions will exclude the defendants from the benefit of the statute, if not insisted upon by the answer. For how can the answer be said to deny the trust, if, upon its admissions, the court can execute the trust? The point is, not whether the answer denies the trust, *modo et forma,* as alleged in the answer, but is there such a substantial denial of it as to prevent the court granting the relief upon the principle that the complainant can recover only *allegata et probata?*

The trust, as alleged in the answer, is substantially this, that Abram Dean should buy the property; that he should hold it as a security for the purchase money, and that John Dean should have the benefit of its value over that amount. The defendants admit that this was the trust upon which the purchase was made, but then they allege that it was part of the agreement between Abram and John, upon which Abram agreed to assume the trust; that John Dean's wife should release her dower-right in the property, which she afterwards refused to do. But did this refusal deprive John of all interest in the purchase? Both of the brothers relied upon the wife's releasing. Both were disappointed in this expectation. But should John alone suffer from her refusal, and Abram reap the benefit of it? It appears sufficiently in evidence, that in consequence of this arrangement, the property sold for much less than its value. It would be unjust if Abram could have held the property, discharged of the trust, in consequence of John's wife's refusal to release her dower. Suppose that on the day after the sheriff's sale, and after the wife's refusal to release her dower, Abram had sold the property for six thousand dollars; could it be.

that a Court of Chancery would not compel him to account for the profits? It appears to me that the answer contains such an admission of the trust alleged in the bill, that the court can execute it without the assistance of parol testimony; and that, therefore, the defendants not having insisted on the statute for their protection, they must be considered as having renounced the benefit of it.

The question remains, are the complainants entitled to any relief upon the case as it stands, by the pleadings and proofs before the court?

This trust was created in 1812, thirty-nine years before the bill was filed. The youngest of the complainants became of age more than twenty-eight years prior to the filing the bill. The defendants interpose the *lapse of time* to the complainants' claim for relief. The complainants insist that in cases of trust, *lapse of time* is no bar.

" As long as there is a continuing and subsisting trust acknowledged or acted on by the parties, the statute does not apply; but if the trustee denies the right of his *cestui que trust*, and the possession of the property becomes *adverse*, lapse of time from that period may constitute a bar in equity." *O. and J. Kane* v. *Bloodgood et al.*, 17 *J. C. R.* 90. " Even in cases of express trust, if the parties have long ceased to act upon or recognize them, courts of equity will not interfere to enforce them; and *a fortiori*, not in cases of mere constructive trusts, (*S. Eq. P.*, § 756,) courts of equity fully recognize the maxim, *vigilantibus, non dormientibus, jura subvenuant* as well in matters of trust as in other cases. What lapse of time will constitute a bar must depend, in a measure, upon the nature of the trust—the relative situation of the parties to the subject matter of the trust—and other attending circumstances. Where a party has slept over his rights for more than twenty years, and has been grossly negligent, in not asserting them when fitting opportunities have presented; where he has recognized or acquiesced in acts inconsistent with the existence of any trust, and where his conduct has been such as to involve innocent parties, as against them the court will never execute the trust.

Let us examine the character of this trust, and the conduct of the complainants in regard to it.

All the right or equity which John Dean had in the land after it was conveyed by the sheriff to Abram, was a right to redeem it at the price for which it was purchased. Abram Dean was under no obligations to sell the property in any particular manner, or to hunt up a purchaser. When John Dean could find a purchaser who was willing to make good to Abram his advances, he had a right to call upon Abram for a conveyance. The situation of Abram Dean was like that of a mortgagee in possession. He held the land to reimburse himself for the money he had advanced upon it. The statute declares " that if a mortgagee and those under him be in possession of the lands, tenements, and hereditaments contained in the mortgage, or any part thereof, for twenty years after default of payment by the mortgagor, then the right or equity of redemption therein shall be forever barred." As a court of equity acts in analogy to the law in applying the statute of limitations, (S. Eq. P., § 756; Dexter et al. v. Arnold et al., 3 Sumner's Rep. 152,) and as the trust created by the original parties was similar to that which exists between mortgagor and mortgagee, the defendants have some ground for insisting that the mere lapse of twenty years is a bar to a trust similar to that which is now sought to be enforced against them.

But the defendants do not rest their defence here. They insist that John and Abram Dean, during their lifetime, ceased to act upon or recognize the trust; and that, since their death, the complainants have acquiesced in its abandonment.

The bill admits that, soon after the delivery of the sheriff's deed, Abram entered upon the possession of the property, that he cut down a valuable portion of the wood, and treated the property as his own. It is true the bill alleges that John Dean remonstrated with his brother against these acts, and accused him of not intending to recognize the trust. But there is no proof of this; and even if there was, it would establish the fact that Abram was using and occu-

pying the property in a manner adverse to the recognition of any trust. John died in 1815, and in the following year his brother died. There is no evidence that John ever called upon Abram to execute the trust, or charged him with the abuse of it. These are, indeed, very slight circumstances to show that the trust was abandoned by their common consent; but they amount to some evidence. The subsequent conduct of the complainants is wholly inconsistent with the existence of a trust in which they were interested. Let us examine it.

On the 5th day of September, 1816, an agreement in writing was entered into between the executors of Abram Dean and Mary Dean, the mother of the complainants, respecting her dower. In this agreement, the land, the subject of this controversy, is recognized as the absolute property of the estate of the late Abram Dean, and as formerly belonging to John Dean, deceased; and Aaron, one of the complainants, signed this agreement as a subscribing witness. On the 27th of March, 1817, the widow's dower in this property was assigned to her. She entered into the possession of the part assigned her, and Aaron occupied the property with her, except a very short interval of time, up to the year 18—. In 1821 a partition of this property was made between the three children of Abraham, his devisees. Mary Van Pelt, one of these children, held her portion by a trustee, for many years, and then it was sold. Aaron, another of these children, died in 1849, after devising his portion for the benefit of his wife and his children, some of whom are minors, and are defendants in this suit. The greater part of this portion has been sold, and has passed into other hands. These various dispositions of the property have not been made without the knowledge of the complainants. They are all stated in the bill, and without any pretence by the complainants that during all these transactions, they, or either of them, have ever asserted any right in the property, or given any notice of the claim which they now set up. Since their father's death, Aaron, one of the complainants, has always lived in the immediate vicinity of the land, and for a large portion of that period upon it, and

the other, at not a greater distance from it than the city of New York. What excuse do they give for sleeping over their rights; for not giving notice of their claim; for acquiescing in acts inconsistent with it; and for thus involving these defendants, who are innocent parties in this transaction? Their only excuse is their poverty. If that prevented their asserting their rights in a legal tribunal, it was no obstacle to their giving a friendly notice to innocent parties, who were entirely ignorant of any such claim as these complainants are now endeavoring to enforce against them. "Where a bill in equity is brought after a great lapse of time, it is incumbent on the plaintiff to state the reasons why it is not brought before, in order to repel the presumption of laches or improper delay." *Stearn's Adm., &c.,* v. *Page,* 1 *Story's Rep.* 204. That was the case of a bill brought by an administrator *de bonis non,* for an account of the intestate's estate, after the lapse of from twenty to twenty-five years, and the defendant pleaded the statute of limitations, and filed a general answer to the whole bill; and the court said, "after such a lapse of time, it being between twenty and twenty-five years after the alleged transactions took place, and ten years after the death of the administratrix, the court have a right to require, before the bill is entertained, that a clear case should be made out upon the very face of the bill, calling for its interposition, and showing that the parties in interest have been guilty of no negligence or undue delay in not applying for relief at an earlier period."

Here is not mere length of time unaccounted for, which is, of itself, evidence of gross negligence and laches in the complainants, (*S. Eq. P.,* § 756, *a*); but the complainants' own acts, and their acquiescence in the acts of others, bear strong testimony to their having ceased to act upon or recognize the trust. The defendants have made a complete defence to the complainants' case, under the general rule as laid down in *Baker et ux.* v. *Whiting et al.,* 3 *Sumner's Rep.* 476. "In equity, length of time is no bar to a trust clearly established; provided, no circumstances exist to raise a

presumption from lapse of time, of an extinguishment of the trust, and no open denial or repudiation of the trust, is brought home to the knowledge of the parties in interest, which requires them to act as upon an adverse title."

I am satisfied that this case is one, both upon the pleadings and proofs, in which no relief can be afforded the complainants without doing the defendants great injustice, and that the court ought not, under the circumstances, to interfere in the complainants' behalf.

I have not noticed that part of the case about which much was said on the argument, as to how and how much of the consideration money was paid. I think the sheriff's receipt and statement ought to be considered at least *prima facie* evidence that the consideration money was all paid. After an expiration of more than thirty years from the death of the original parties, to require of these defendants any further evidence on this point would, I conceive, be a great hardship.

The bill must be dismissed, with costs.

CITED *in Marsh* v. *Oliver*, 1 *McCar.* 262; *Cowart* v. *Perrine*, 3 *C. E. Gr.* 457.