THOMAS STARKEY et al.

v.

ELIZABETH FOX et al.

To defeat an open, notorious, exclusive and unquestioned possession of lands for fifty years, on the ground that the party in possession held as the trustee of an express trust, it must clearly appear that the possession was taken and held while the trust was subsisting. When the court is asked to presume such conditions, they must not only be deducible from some of the facts, but must be equally consistent with others. Such presumption will not be made where a presumption is also raised, consistent with all known facts, that the trust has been extinguished.

On bill, answer, replication and proofs in open court.

This bill is to establish an alleged express trust in certain lands in Morris county, and for relief.

June 14th, 1838, one Thomas Holden was seized in fee of three tracts of land described in the bill, and situate about a mile and a half from the court-house in Morristown, Morris county.

Thomas Holden executed and delivered to one Elizabeth Fox of Newark a mortgage upon these tracts of land, dated June 14th, 1838, for $1,200, due in one year, with interest, according to the condition of the bond, which mortgage was recorded in Book R of Mortgages of Morris county, page 123.

Elizabeth Fox, the mortgagee, died April, 1839, in Essex county, intestate, leaving her surviving a son, Thomas Fox, and two daughters, Martha, then the wife of Benjamin Starkey of Morris county, and Zilpah, then the wife of Elias Stansberry of Essex county.

Letters of administration on the estate of Elizabeth Fox were granted by the surrogate of Essex county, May 4th, 1839, to her son, Thomas Fox, who took upon himself the administration of the estate. He filed an inventory of the personal estate, in

which was included the amount of principal and interest due on said mortgage of Thomas Holden, appraised at $1,263.80.

Thomas Fox, as administrator, January 20th, 1840, filed a bill in this court to foreclose the said mortgage. Decree of foreclosure and sale was entered April 9th, 1840, fixing the amount due on said mortgage at $1,331.20. Execution was issued to the sheriff of Morris county, under which the said sheriff, on July 18th, 1840, sold the mortgaged premises to Thomas Fox, administrator of Elizabeth Fox, for the sum of $920. By deed dated July 27th, 1840, the said sheriff conveyed the several tracts of land unto " Thomas Fox, administrator as aforesaid, and to his assigns," the word " heirs" being erased. This deed was recorded in Morris county, July 27th, 1840.

Thomas Fox was cited to account as administrator on May 4th, 1841, to the orphans court of Essex county. The account filed by him was verified July 12th, 1841. In the account he charges himself with the amount of the inventory, $2,075.99, and some other amounts followed by this item :

"To real estate in Morris county, mortgaged by Thomas Holden and wife to the intestate. The accountant foreclosed said mortgage, and as administrator took a sheriff's deed for the premises, which deed he holds in trust for the estate. The accountant has not obtained possession of said premises, an action of ejectment for that purpose being now depending in the Morris circuit court, value of said premises uncertain."

And he prays allowance *inter alia,* as follows :

"For the amount of the bond and mortgage of Thomas Holden, wherewith he is charged in the inventory, the said Thomas Holden being insolvent and no part of the said sum having been received by the accountant (excepting by a sheriff's deed to accountant as administrator as before stated), $1,263.50."

Exceptions to the account were filed by Benjamin Starkey, the husband of Martha Fox, describing himself as " being interested in the settlement of the account," and it was referred to Jacob K. Mead, Joseph Hewson and Theodore Frelinghuysen, auditors, to examine and restate.

The auditors made their report to the April Term, 1842. By the restatement the administrator was charged $2,305.49, and

allowed $2,454.31. Balance reported due administrator, $148.82, with the following statement:

> "The said administrator holds in trust for the estate certain real estate in Morris county, mortgaged by Thomas Holden and wife to the intestate, which mortgage this accountant foreclosed as administrator and took a sheriff's deed for the premises, which deed he holds in trust for the estate. This accountant has not obtained possession of said premises, an action for that purpose being now pending in the Morris county circuit court, value of said premises uncertain, March 19th, 1842."

This paper is endorsed "Thomas Fox adm. of Elizabeth Fox dec'd. His account as restated by auditor." Signed by Stephen D. Day, Samuel B. Twiller and J. S. Crane, who were judges of the orphans court of Essex county at the time. It does not appear that any formal decree was entered in the minutes.

Thomas Fox afterwards obtained possession of the farm, when it does not definitely appear, but Mr. Pearson and Mr. Tuttle say it was about the year 1840, but from the auditors' report it must have been after March, 1842. Thomas Fox, soon after taking possession, tore down the old barn and house upon the premises, and built a new barn and a new house, and lived in the latter until his death in 1891. During the whole of this time he worked the farm, clearing, improving and tilling it, and paid the taxes, taking to himself the proceeds without accounting or being called to account by Benjamin Starkey, husband of Martha Fox, who lived for most of the time in Morris county near the farm, or by Elias Stansberry or Nehemiah Baldwin, the husbands of Zilpah Fox, who resided in the county of Essex, or by anyone until this suit.

Thomas Fox died in 1891, leaving him surviving his daughters, Elizabeth Fox, Caroline, wife of Jeremiah Stalter; Martha, wife of George Harry; Harriet, wife of John N. Conklin, and a grandchild, Elizabeth May Moody, infant of a deceased daughter, Mary, wife of Matthew Moody. Thomas Fox died testate, appointing by his will his sons-in-law, Jeremiah Stalter, George Harry, Matthew Moody and John N. Conklin, his executors, and giving, devising and bequeathing the residue and remainder of his estate, real and personal, to his five daughters, their heirs,

executors, administrators and assigns, in equal shares. The executors proved his will, and have, under a clause of the will, executed a deed to Elizabeth Fox, for three and eighty-seven one-hundredths acres, and one to Mary E. Ogden, for twenty-two and eighty-four one-hundredths acres. The heirs and executors of Thomas Fox and Mary E. Ogden, and the heirs-at-law of Thomas Holden, are the defendants in this suit, the latter on the ground that the sheriff's deed, not containing words of inheritance, conveyed a life estate only, and they, on the record, are entitled to the reversion.

Martha Fox, daughter of Elizabeth Fox, the mortgagee, married, about the year 1820, Benjamin Starkey. She died in 1877, leaving her surviving her husband and five children, viz., Thomas Starkey, Joseph Starkey, Sarah Ann, wife of John M. Johnson; Alice, wife of Isaac Van Ness, and Elizabeth, wife of John Flurry, who is since deceased without issue. Benjamin Starkey, the husband, who was the exceptant to the account of Thomas Fox, administrator, died testate. His will, dated July 12th, 1883, was proved May 2d, 1889, by the executors therein named—Joseph Starkey and John M. Johnson. After directing his debts to be paid, he gives all the rest, residue and remainder of his estate to his five children.

Zilpah Fox, daughter of Elizabeth Fox, the mortgagee, married, somewhere about the year 1831–32, Elias Stansberry. He died January 1st, 1844, leaving him surviving his widow, Zilpah, and two daughters, Elizabeth, born in 1833, who is now the wife of Abraham Cadmus, and Mary Jane, born in 1841, who is now wife of George Cadmus. His widow afterwards married Nehemiah Baldwin, who died in 1850, without issue, and she died August 6th, 1888, having appointed her daughters her executors and legatees.

These heirs and representatives of Martha Fox and Zilpah Fox are the complainants.

The bill prays that the sheriff's deed to Thomas Fox, administrator, may be reformed by inserting proper words of inheritance; that Thomas Fox may be decreed to have purchased and held the estate in said lands in trust for himself and his sisters;

that, at his death, said estate descended to his heirs-at-law, sub-
ject to said trust; that the conveyances by his executors to
Elizabeth Fox and Mary E. Ogden may be declared invalid
and that partition be made, or, if that is not practicable, then
for a sale and division of the proceeds, and for an account of
rents, issues and profits, while occupied by Thomas Fox and his
heirs or executors, and two-thirds thereof, if not paid, charged
on the third to be set off to the heirs of Thomas Fox or deducted
from the proceeds of such third.

All parties having joined in a deed to Mary E. Ogden, and
the purchase-price of her lot, $7,000, having been paid into
court to the credit of the cause, the suit was discontinued as to
said Mary E. Ogden.

The joint and several answers of the defendants under oath,
the bill not having waived answer under oath, sets up several
defences to the suit, *inter alia*, that the accounting in the Essex
county orphans court was made in obedience to a citation issued
at the instance of Benjamin Starkey, who also filed exceptions
to the account, which was referred to auditors, who restated the
same and reported it to the orphans court, by which it appeared,
after making all proper charges against the said administra-
tor and allowing all proper allowances (including said sum of
$1,263.80, the amount of the bond and mortgage), there was due
him, as administrator, $148.82 without commissions, besides
other items and sums not carried out in said restated account,
which defendants say would amount to at least $100 more, and
which restated account was duly approved and passed by the
said orphans court, and deny the charge of the bill that Thomas
Fox did not in any way account to the estate for the amount of
the bond and mortgage or the amount of the purchase-money,
but

"insist that all such accounting as was necessary or required was made, and
submit that while it may be difficult, if not impossible (outside of said account-
ing in the Essex county orphans court), after the lapse of fifty years, to show
just when or how said accounting actually did take place; that after such
lapse of time during which to the knowledge or belief of these defendants no
claim or demand for an accounting or payment has been made (except said
citation), it is a legal presumption, and this court will presume, that such

accounting was made, and that any and all alleged claims of complainants or heirs-at-law or next of kin of their said parents or either of them against said Thomas Fox, as such administrator, were long since paid or adjusted and extinguished."

They admit that Thomas Fox, from about the time of the alleged delivery to him of the sheriff's deed to the day of his death, was in the actual and exclusive possession of the land, and took and appropriated to himself the rents, issues and profits thereof, and never accounted to the heirs of Elizabeth Fox for any part thereof; that from 1841 to his death in 1891, he was in peaceable, open, notorious, exclusive and unquestioned occupation and possession, which was always acquiesced in and never to their knowledge or belief by any person disputed or called in question, and insist

" that the said Thomas Fox, by such adverse and exclusive possession, acquired the absolute title in fee to said premises against all persons whomsoever, and that by virtue of the statutes of limitations his title to said lands cannot be in anywise called in question."

That under the law, as it was in 1841–42, the husbands of Martha Fox and Zilpah Fox were entitled to the proceeds, if any, of said bond and mortgage, and that said indebtedness of said estate to said Thomas Fox, as such administrator, having never been paid or discharged, and said Thomas Fox having held such lands adversely for more than twenty years, his title thereto, by virtue of the statute in such case made and provided, became perfect and indefeasible.

*Mr. Theodore Little*, for the complainants.

*Mr. John R. Emery*, for the defendants.

GREEN, V. C. (After stating the facts as above).

It seems to be conceded that, by the law of the State of New Jersey, as it was at the time of the accounting of Thomas Fox, as administrator of Elizabeth Fox, in the orphans court of Essex county, in 1842, the husbands of Martha Starkey and Zilpah

Stansberry, the two sisters of Thomas Fox, and with him the next of kin of Elizabeth Fox, deceased, viz., Benjamin Starkey and Elias Stansberry, were respectively entitled to the shares of their wives in the settlement of the estate, namely, each one-third of the amount to be distributed.

By the accounting, which was not a final one, there was found to be due to the administrator from the estate $148.82, which amount would be further increased by about one hundred dollars for sheriff's fees and other matters not brought into that account. This balance, as due the administrator, was arrived at without taking into account the Holden bond and mortgage, which was inventoried at $1,263.50, but which had realized on the foreclosure sale only the sum of $920.

The only evidence as to the value of the property bought in by Thomas Fox, the administrator, at the sheriff's sale, is the amount it brought at that sale, and that, in the absence of other testimony, must be taken as the market value.

If a settlement had been made at that time, viz., in 1842, on that basis, Thomas Fox would have been entitled to deduct $248.82, the amount due him from $920, the value of the farm, leaving $671.18 to be equally divided between himself and the husbands of his two sisters, namely, $223.72⅔ each to Starkey and Stansberry respectively, Thomas Fox's own interest being $472.54⅔.

The claim of the complainants rests on the assumption that Thomas Fox never settled with the persons named who were entitled to those two amounts of $223.72⅔ each.

The possession of Thomas Fox of the premises in question for nearly half a century was open, notorious, exclusive and unquestioned. There was no possible act of assertive ownership which he did not exercise. He tore down not only the out-buildings, but the dwelling-house, and at his own expense erected a new barn and a new house. He fenced, improved and tilled the land, took the product, paid the taxes and never recognized anyone as having an interest with him in the estate, continued to live in the house in undisputed possession until the

day of his death, in 1891, and, dying, disposed of it by will among his children.

Ordinarily, in such a case, the statute of limitations would be an effective defence unless the claimant rested under one of the specified exceptions. The period of twenty years, within which a right of entry could be exercised or any possessory action maintained, had more than twice elapsed. Fox's title by possession was good against the world at law, for no one could disturb him—could invoke the exceptions to the statute. There was nothing to impeach his title or imperil his possession but the interposition of a rule of equity that lapse of time does not affect an express trust. It is therefore insisted that the complainants' right of recovery rests alone on the contention that the possession of Thomas Fox cannot avail the defendants, his devisees, because he was in possession as trustee of an express trust. There can be no dispute that the statute of limitations cannot be successfully invoked in equity by one who occupies such position at a time when there is a continuing and subsisting trust, acknowledged or acted on by the parties, the reason being that, as his possession is that of the *cestui que trust*, it cannot be said to be adverse. *Hovenden* v. *Lord Annersley, 2 Sch. & L. 633.*

The statute of limitations is a statute of repose. The protection it affords is not to be displaced unless the existing conditions clearly show that it should not be maintained. After a lapse of fifty years, when everyone who could explain the surrounding circumstances has passed away, the barrier which it interposes is not to be easily thrust aside, and family settlements and titles disturbed.

The claim here is one founded on a technical rule of equity, applicable to express, but not to implied, trusts. The rule is founded on good and sufficient reasons, which are unassailable, but it should not be applied in a case like the present unless its applicability is without question. It is not to be invoked if based on presumption unless such presumption is a conclusive one from all the circumstances. The possession of nearly half a century, exclusive and to all appearances adverse, is not to be

disregarded on the ground that Fox was in possession under an express trust unless it satisfactorily appears from the proofs that he took possession as such trustee, and that the trust continued to subsist during his possession and is impressed on the estate in the hands of his devisees.

The recital in the account filed by Thomas Fox, that he then held the deed in trust for the estate, is a sufficient declaration of an express trust. The statement by the auditors, to whom the account was referred on exceptions filed, cannot, of course, have any such effect. It was not within the province of the orphans court, in passing the account, to declare trusts. But the affidavit annexed to the original account, containing the above recital, is signed by Thomas Fox. In *Jamison* v. *Miller, 12 C. E. Gr. 586,* it was held that the signing by the defendant of an answer containing a declaration or admission of a trust, was a manifestation within the statute of frauds, and on the same reasoning, this statement, signed by Thomas Fox, must be considered as a sufficient declaration of trust, and, taken in connection with the deed itself, proof of the existence of an express trust.

The statement, however, was, that he "held the deed in trust." The account in which it is made is dated July 12th, 1841. Up to that time Fox had not got possession of the property, although the deed is dated July 24th, 1840. Nor was he yet in possession, according to its recitals, at the time of the auditor's report, March 19th, 1842.

It further appears, by the account filed, that an action of ejectment, brought by Thomas Fox against someone to recover possession of this property, was pending in the Morris circuit when the account was filed in 1841 and passed in 1842.

There is, however, no evidence who the defendant in that suit was, or on what title it was prosecuted, or on what ground defended; nor when or how it was ultimately decided; nor whether Thomas Fox obtained possession by means of a recovery therein.

To make the possession of Thomas Fox the possession of his *cestuis que trust,* and for that reason not adverse, it should have been made to appear, by the complainants, on whom is the burden

of proof, that his possession was taken or continued as trustee, and this should have been proven, and not left, as it is, to inference. It is no answer to say that, at this late day, it is well-nigh impossible to prove such conditions. This trust was not an active, continuing trust in the sense that the trust fund, or *corpus* of the trust, was to remain for a length of time subject to the management of the trustee before payment or division. It was ripe as soon as it was declared. It could be executed as soon as it was created. If Fox got possession of the property under the deed which he declared he held in trust, or while the trust was still subsisting, his brothers-in-law could have at once required him to execute his trust, either by payment to them of their portions, or by sale of the property and division of the proceeds, or by partition of the land. It was as much in the power of Benjamin Starkey and Elias Stansberry to have instituted this suit in 1842 as it was for these complainants to do so in 1891. Fifty years ago, when every event was of recent happening, every remedy was open to those under whom complainants claim. Difficulty or impossibility of obtaining proof of circumstances occurring long ago is no excuse for those whose ancestors have neglected pursuing remedies open to them in equity, leaving to their descendants a possible right of action, to be enforced after " lapse of time has carried with it the memory and life of witnesses and the muniments of evidence and other means of proof."

I admit that the facts present a strong probability that Thomas Fox did obtain possession of the property by virtue of the deed which he had declared he held in trust, but is it the convincing presumption on which the protection of the statute is to be brushed aside? Is it not only deducible from some facts, but is it entirely consistent with other known conditions? We are asked to presume that Thomas Fox was in possession as trustee. This is to be deduced from the deed, the declaration in the account, the action of ejectment and the fact of possession. This at best would be only a presumption of fact, and can be overcome or superseded by other presumptions if they are fairly to be drawn from the facts of the case. The inconclusiveness of

the deduction is that while it is consistent with the facts named, it is not so with other facts which raise another presumption, viz., that the trust was extinguished by the settlement of the amount due the *cestuis que trust*, either before or after Fox got possession of the land.

If Thomas Fox paid each of his brothers-in-law the $223.72⅔ due, prior to taking possession, the trust was extinguished, and he never was in possession as trustee, and his possession was adverse and is a complete defence.

But even if the proof is satisfactory that possession and the relationship of trustee and *cestuis que trust* was at one time coincident, there may be certain conditions which will prevent the application of the rule that time does not run against an express trust, for when the relation is no longer admitted to exist, or gross laches in enforcing a known right or long acquiescence in the alleged breach of trust is shown, when lapse of time has obscured the nature and character of the trust or the acts of the parties, or other circumstances give rise to presumption unfavorable to its continuance, in all such cases a court of equity will, even in a case of express trust, refuse relief upon the ground of lapse of time and its inability to do complete justice. *2 Story Eq. Jur.* § *1520 &c.; Bright v. Legerton, 2 De G., F. & J. 606; Dean v. Dean, 1 Stock. 425; Kane v. Bloodgood, 7 Johns. Ch. 90; McDonnel v. White, 11 H. L. Cas. 570; Prevost v. Gratz, 6 Wheat. 481; Philippi v. Philippe, 115 U. S. 151; Pattison v. Hawkesworth, 10 Beav. 375; Baker v. Whiting, 3 Sumn. 486; S. C., 2 Fed. Cas. 787; Browne v. Cross, 14 Beav. 105; Harcourt v. White, 28 Beav. 303.*

It will be noted that this doctrine is not an exception to the rule, but proceeds on an inference from facts other than, but in connection with, the lapse of time, that the trust has been executed or in some way extinguished, as is said by the master of the rolls, in *Pickering v. Stamford, 2 Ves. Jr. 581* (at *p. 583*): " Every presumption that can fairly be made shall be made against a stale demand. It may arise from the acts of the parties, or the very forbearance to make the demand affords a presumption either that the claimant is conscious it was satisfied

or intended to relinquish it." *Harcourt* v. *White, supra;* *Dean* v. *Dean, supra.*

Do, then, the facts raise a presumption that the trust declared was either extinguished or had ceased to be recognized by the parties? Benjamin Starkey, to whom one portion of the estate was payable, was an active antagonist of Thomas Fox. He interposed exceptions to the account filed by the administrator in the orphans court and contested its allowance. He resided in the immediate neighborhood of the property in question, and must have known of the acts of Thomas Fox upon and with it. The other beneficiary, Elias Stansberry, lived in the adjoining county of Essex. His pecuniary circumstances are shown to have been such that it is not probable he would relinquish a debt due him without an effort to secure it. It is inconceivable that either of these men would have permitted Fox to take and continue in possession of these lands, tear down the buildings and fences and treat the property as his own exclusively, or have acquiesced in his assumed sole proprietorship, without having first settled with them the amount due to each on the accounting.

Nor is it likely that Benjamin Starkey, who did not die until 1889, would have lived for over forty-five years in the immediate vicinity without having taken any proceedings, so far as appears by the evidence, to enforce the payment of the amount found by such accounting to be due him. Nor is it likely that Fox would have expended his own money in the erection of a house and barn on the property, if the trust had not been extinguished by a settlement with those who were hostile to him.

This presumption of settlement is not based on the lapse of time solely, but on the otherwise inconsistent and incomprehensible conduct of the parties. It is an inference with which every fact or known condition is in harmony, and must overcome the other, which is at variance with some admitted facts.

The only excuse offered for the great delay in bringing this suit is the poverty of the Stansberrys and Baldwins. It is not urged as to the Starkeys. It is to be noted that there is in the case no misrepresentation, concealment or ignorance of the facts, and in such cases Vice-Chancellor Wigram, in *Roberts* v. *Tun-*

49

*stall, 4 Hare 257,* expresses the opinion that such excuse is not valid. But extreme poverty is not here proved. The expense could have been but slight, and as Chancellor Williamson, in *Dean* v. *Dean, supra,* says, " while it may have prevented the prosecution of a suit, could not have made it impossible to make a demand or protest."

In my opinion, the complainants fail to establish that Thomas Fox took possession as trustee, or to rebut the presumption that the trust was extinguished, or to excuse the delay in prosecuting the claim, and, without examining the other points raised, I advise that the bill be dismissed.