Stimis *v.* Stimis.

CHRISTOPHER STIMIS, administrator *de bonis non cum testamento annexo* of John Stimis, deceased,

*v.*

JOHN B. STIMIS et al.

1. A lapse of twenty years after a mortgage has become due, within which there has not been either payment or demand of the principal or interest, or part thereof, or entry by the mortgagee into possession of the mortgaged premises, will raise a presumption that the mortgage has been satisfied, though in fact it be not paid.

2. Such presumption may be taken advantage of by demurrer to a bill which alleges the facts raising it without averring circumstances which will rebut it.

3. Lapse of time will not be allowed to defeat an express trust, cognizable in equity alone, which continues to be acknowledged and acted upon by the parties.

4. When the relation of trustee and *cestui que trust* is no longer admitted to exist, or gross laches in enforcing a known right or long acquiescence in the alleged breach of trust, is shown, and lapse of time has obscured the nature and character of the trust, or the acts of the parties or other circumstances give rise to presumption unfavorable to its continuance, a court of equity, even in case of an express trust, will refuse relief upon the ground of lapse of time and its inability to do certain and complete justice.

5. A mortgagor became the executor of the will of his father, the mortgagee, before his mortgage was paid, the beneficiaries under the father's will being his mother for her life, and his brothers, sisters, two nephews and himself, in remainder. After the mortgage became due and his mother died, he retained possession of the mortgaged premises, and failed to pay interest upon the mortgage or to pay any part of the principal thereof, for fifteen years,

within which time he sold a portion of the premises, and then, never having accounted as executor, executed a satisfaction of the mortgage, and thereafter, continuing in possession of the mortgaged premises, sold other portions thereof, and yet failing to pay either principal or interest, lived four years and died. Three years after his death; no part of the principal or interest of the mortgage having yet been paid, the administrator *de bonis non* &c. of the estate of the father filed his bill to foreclose the mortgage. Upon demurrer to the bill on the ground that more than twenty years had elapsed since the making of the mortgage, within which neither principal nor interest had been paid—*Held*, that the presumption arising from such· lapse of time without the payment indicated, was rebutted by the implication arising from the executor's failure to account, his execution of the satisfaction and the near relationship between him and the other beneficiaries of his father's estate.

On demurrer to bill.

The bill, which was filed in February, 1894, alleges that in 1851 Henry Stimis mortgaged about two acres of land, situate at Belleville in Essex county, to his father, John Stimis, to secure the payment of $500, with interest, one year after date, which mortgage was duly registered; that later in the same year John Stimis died testate, leaving him surviving his widow, Anne, three sons, Henry, Christopher and William, two grandsons, the sons of a deceased son, and four daughters; that by his will he gave his estate to his widow for her life, "but not to commit waste," and at her death to his children and the sons of his deceased son, they taking one share, and appointed his widow the executrix and his son Henry the executor, of the will; that the will was duly admitted to probate and both the executor and executrix named in it qualified; that in February, 1852, the executrix and executor filed an inventory in which, among other properties, they enumerated this: "Henry Stimis bond and mortgage $500;" that in 1872 the widow died, and in 1891 Henry, the executor and mortgagor, also died; that the executrix and executor never accounted, nor did either of them ever account; that in 1866 Henry sold a strip of the mortgaged land to the Paterson and Newark Railroad Co., for part of its right of way (that company is not a party to this suit); that in 1887, as executor, he executed and recorded a satisfaction of the mortgage, as follows:

"I, Henry Stimis, do hereby certify that a certain mortgage, bearing date the thirtieth day of June in the year of our Lord one thousand eight hundred and fifty-one, made and executed by Henry Stimis to John Stimis, to secure the sum of five hundred dollars, and registered in the office of the Register of the county of Essex in Book X 2 of Mortgages, page 231 &c., on the eighteenth day of February, 1852, at —— o'clock, — M., is paid and satisfied and I do hereby consent that the same may be discharged of record. Dated the eleventh day of July, 1887.

"Witness—                                      HENRY STIMIS,  [L. S.]
        "J. E. HOWELL.                                    *Executor.*"

. that in fact the mortgage had never been paid and satisfied by Henry Stimis nor by anyone in his behalf; that at the time of the execution and record of the satisfaction, the whole of the principal of the mortgage, with large arrears of interest, remained due and owing by Henry to himself as executor of his father's will ; that no part of the principal of the mortgage was ever paid, and no interest was paid after the death of Anne Stimis; that the execution and record of the said satisfaction was without consideration and in fraud of the estate of John Stimis, deceased, and of the legatees under his will; that in 1891, some three months before he died, Henry conveyed two portions of the mortgaged property to his daughter, Susan E. Burling, who knew that the mortgage had not, in fact, been paid; that by his will he gave the residue of his estate to his five children ; that the complainant was appointed administrator *de bonis non cum testamento annexo* of John Stimis in May, 1892; that the complainant has obtained possession of the mortgage, and that since the execution of the mortgage, the mortgagor and his devisees and assigns have retained possession of the mortgaged premises.  The bill prays that the satisfaction of the mortgage shall be decreed to be void and of no effect, and that the mortgage shall be decreed to be valid and that the equity of redemption in the mortgaged premises may be foreclosed.

The defendants demur on the ground that more than twenty years have elapsed since the maturity of the mortgage, within which neither principal nor interest has been paid, and that therefore they are entitled to the presumption that it has been satisfied.

Stimis v. Stimis.

*Mr. James E. Howell,* for the demurrants.

*Mr. Herbert Boggs,* for the complainant.

THE CHANCELLOR.

It is settled by the adjudications of this court that a lapse of twenty years after a mortgage has become due, within which there has not been either payment or demand of the principal or interest, or part thereof, or entry by the mortgagee into possession of the mortgaged premises, will raise a presumption that the mortgage has been satisfied, though in fact it be not paid. *Wanmaker* v. *Van Buskirk, Sax. 685; Evans* v. *Huffman, 1 Halst. Ch. 354; Barned* v. *Barned, 6 C. E. Gr. 245; Murphy* v. *Coates, 6 Stew. Eq. 424.* And this presumption may be taken advantage of by demurrer to a bill which alleges the facts raising it, without averring circumstances which will rebut it. *Olden* v. *Hubbard, 7 Stew. Eq. 85.* The formal averment in a foreclosure bill, that the principal and interest of the mortgage are now due and owing, manifestly a mere conclusion argumentatively insisted upon, is not admitted by demurrer. *Olden* v. *Hubbard, supra; Redmond* v. *Dickerson, 1 Stock. 507, 516.*

The allegations of the bill considered show that no payment of either principal or interest of the mortgage in question has been made since the year 1872, that is, for a period of twenty-two years prior to the filing of the bill, during which time the mortgagor, his assigns and devisees have been in possession of all parts of the mortgaged premises, and it fails to show that within that time any demand has been made for the payment of principal or interest, or any part thereof. From these facts the presumption invoked clearly arises, and the principal question of the case becomes, whether other circumstances averred are sufficient to rebut the presumption.

It appears that in 1852 the mortgagor became one of the executors of the will of the mortgagee, which will devised and bequeathed all the testator's estate to his widow during her life or widowhood with this *addendum,* " but not to commit waste," and at her death to his children, of whom the mortgagor was

one.   As executor of that will it became the mortgagor's duty, together with his mother, to collect the assets of the estate, pay the testator's debts, account for the executorship in a year and transfer the residue of the estate to the life tenant, who thereafter would become accountable for it to those who were to take it in remainder.   The estate was not given to the executors in trust for the widow for life and then to distribute it to those taking in remainder, but was given directly to the life tenant, and hence the trust confided to the mortgagor through the executorship, so far at least as the mortgage in question is concerned, would, in regular course, terminate with the accounting, which became due in the year 1853, and his transfer of it at that time to the life tenant.   It appears that there never was, in fact, an accounting, and because of this circumstance, coupled with the official action of the executor in 1887, when he satisfied the mortgage of record, it is claimed that the trust of the executorship, an express trust, continued until the mortgagor died, in 1891, and, this being so, that lapse of time will not avail to defeat the relief sought by the complainant, or, in other words, that the presumption already referred to is rebutted.

It is the rule that lapse of time will not be allowed to defeat an express trust cognizable in equity alone, which continues to be acknowledged and acted upon by the parties. *Kane* v. *Bloodgood, 7 Johns. Ch. 111; Conover's Executor* v. *Conover, Saxt. 403; Wanmaker* v. *Van Buskirk, supra; Allen* v. *Woolley, 1 Gr. Ch. 209; Stark* v. *Hunton, 2 Gr. Ch. 311; Dean* v. *Dean, 1 Stock. 425; McClane's Administrator* v. *Shepherd's Executor, 6 C. E. Gr. 76; Marsh's Executor* v. *Oliver's Executors, 1 McCart. 259; Lindsley* v. *Dodd, 30 Atl. Rep. 896.*

The reason is, that the possession of the trustee, while the relation of trustee and *cestui que trust* is admitted to exist, is deemed to be possession for the *cestui que trust* and coincident with the title of the *cestui que trust*.   But when the trustee denies the right of the *cestui que trust* and his possession of the property becomes adverse, lapse of time from that period may constitute a bar in equity. *Kane* v. *Bloodgood, supra; Dean* v. *Dean, supra; Young* v. *Young, 18 Stew. Eq. 40; Starkey* v. *Fox, 7*

*Dick. Ch. Rep. 758; S. C. affirmed on appeal, 8 Dick. Ch. Rep. 239.*

And even if the proof be satisfactory that possession and the relationship of trustee and *cestui que trust* was at one time coincident, there may be certain conditions which will prevent the application of the rule that time does not run against an express trust, for when the relationship is no longer admitted to exist or gross laches in enforcing a known right, or long acquiescence in the alleged breach of trust, is shown, and lapse of time has obscured the nature and character of the trust, or the acts of the parties or other circumstances give rise to presumption unfavorable to its continuance, a court of equity, even in a case of express trust, will refuse relief upon the ground of lapse of time and its inability to do certain and complete justice. *Starkey* v. *Fox, supra.* Vice-Chancellor Green, who wrote the opinion in the case just cited, which opinion was adopted by the court of errors and appeals, said: "This doctrine is not an exception to the rule, but proceeds on an inference from facts other than, but in connection with, the lapse of time; that the trust has been executed and in some way extinguished, as is said by the master of the rolls in *Pickering* v. *Stamford, 2 Ves. Jr. 583:* 'Every presumption that can fairly be made shall be made against a stale demand. It may arise from the acts of the parties, or the very forbearance to make the demand affords a presumption either that the claimant is conscious it was satisfied or intended to relinquish it.'" In *Starkey* v. *Fox,* an administrator who had prosecuted a suit for the foreclosure of a mortgage belonging to his intestate to sale, bought the mortgaged premises at the foreclosure sale in his own name as administrator, and subsequently, in the year 1841, accounted for it as an asset remaining in his name undisposed of, in trust for the intestate's estate. It was made to appear that, a year or two later, through proceedings in ejectment, he secured possession of the mortgaged premises, and that, later, he exercised acts of ownership over that property, building thereon and clearing, tilling and improving the soil, paying all taxes and taking all income, without accounting, and that thus he lived in the enjoyment of the prop-

Stimis *v.* Stimis.

erty until the year 1891, when he died. After his death persons entitled to shares of the intestate's estate filed a bill to enforce the trust in the property, and it was held, among other things, that a presumption had arisen that the trust was extinguished, which presumption had not been rebutted.

In the case in hand the executors could have been compelled to account in the year 1853, and thus the estate which was to go to the life tenant could have been ascertained, and security for its safe preservation, upon proof that it was in danger in the hands of the life tenant, if need be, might have been exacted, but those who were to take in remainder, who then, for aught that appears to the contrary, and from thence to the present time, save in the case of Henry Stimis himself, were living and *sui juris*, remained inactive. After twenty years the life tenant died, and then those in remainder became entitled to possession, and yet thereafter for nineteen years, until Henry Stimis died, they stood by, witnessing the possession of the mortgaged lands by him and his grantees, and acquiescing all that time in his failure to pay them interest upon the mortgage. For three years after his death the same conditions continued, and then the present action, was begun. Thus, for upwards of forty years, the remaindermen were silent when they might have spoken, and for more than twenty years they acquiesced in the attitude of the mortgagor so far adverse to his holding the mortgage in trust as withholding interest and failure to acknowledge the mortgage as a valid obligation establishes. Besides, during such acquiescent inaction and laches, the lapse of time carried with it lives of both life tenant and mortgagor, who could have spoken as witnesses, and we know not what other evidences. Did the defendant's claim of rebuttal rest alone upon the mortgagor's failure to account as executor, I think I would feel constrained, notwithstanding the importance of his due discharge from his trust (*Bank* v. *Heiron, 5 Ex. Div. 319*), to decide that the presumption of the satisfaction of the mortgage has been rebutted. *Phillippi* v. *Phillippe, 115 U. S. 151.* But not only did the mortgagor fail to terminate his trusteeship of the mortgage by accounting as executor, but, on the contrary, he affirmed the continuance thereof in the year

1887, seven years before the filing of the bill, when, by deliberate writing executed in virtue of a still existing executorship and continued dominion over the mortgage in that fiduciary character, he declared it to be satisfied and paid. This declaration does not say when the payment was in fact made, but, standing alone, it will not be assumed to speak of a condition prior to its date. The instrument appears to me to amount to an acknowledgment of the existence of the mortgage and continuance of the executorship in control of that instrument to the date of the satisfaction in 1887. The satisfaction is consistent with the executor's failure to account and, by that means, to throw off his fiduciary character and place himself in the position of a stranger to the beneficiaries, and, considered in connection with that fact and the near family relationship between the executor and the beneficiaries, I deem it sufficient, at least while it remains unexplained, to rebut the presumption invoked by the demurrants.

There is absence of laches with reference to the attack upon the satisfaction, if for no other reason, because it does not appear that the existence of that instrument was known to the *cestuis que trustent.* *Lindsley* v. *Dodd, supra.*

I will overrule the demurrer, with costs.