The first problem is whether the trust in which complainants assert an interest has been effectively annulled.
By indenture dated May 26th, 1920, Erasmus Freeman transferred to Henrietta, his wife, and Alfred, his son, $5,000 in trust. The life beneficiary of the trust was James F. Clark, a grandson of the donor, with remainder to the issue of James. James F. Clark, who was fourteen years old when the trust was created, married shortly after coming of age and has two children, Florence, born in 1930, and Elizabeth, born the next year. James and the two infants sue for an accounting.
The trust indenture declared that it should be lawful for the grantor and his wife, by writing "to be by them jointly, or their survivor, sealed and delivered," to annul or alter all or any of the uses set forth in the indenture or to appoint new or other uses. In 1924, while Erasmus was still alive, his wife sealed and delivered an instrument whereby she declared that she terminated the trust and directed the fund to be paid over to trustees of a certain other trust which had been created by Erasmus Freeman in 1917.
The instrument executed by Mrs. Freeman in 1924 is said by defendants to have terminated complainants' interest in the trust fund. Obviously, this cannot be so in the absence of some other factor, inasmuch as it was made in the lifetime of Erasmus Freeman and he did not join therein, although the power of revocation ran to Erasmus and his wife jointly and to their survivor. A gift in trust inter vivos is irrevocable unless the power to revoke is reserved. Gulick v. Gulick, 39 N.J. Eq. 401;Hamilton Trust Co. v. Bamford, 102 N.J. Eq. 454; 105 N.J. Eq. 249.
The power can be exercised only in the manner specified and by the persons to whom the power is given or the attempted revocation is void. Lippincott *Page 37 
v. Williams, 63 N.J. Eq. 130; National Newark and Essex BankingCo. v. Rosahl, 97 N.J. Eq. 74.
Defendants support the attempted termination of the trust by another instrument dated December 31st, 1921, executed by Erasmus Freeman, whereby he renounced and declined to exercise any powers reserved to him in the deed of 1920. Defendants contend that after this renunciation by Erasmus and even during his lifetime, his wife was the "survivor" within the meaning of the power and hence that her revocation of the trust was effective. A survivor is one who outlives another person or lives beyond some happening, as one who survives a flood. By the survivor of two persons is ordinarily meant the one who lives after the other has died. Supp v. Second National Bank and Trust Co., 98 N.J. Eq. 242; Hill v. Safe Deposit and Trust Co. (Md.),60 Atl. Rep. 446. Since the deed contains nothing which suggests that this word was used with any other meaning, I must conclude that Mrs. Freeman was not the "survivor" and that her act was futile and without effect on the rights of complainants.
Counsel have assumed that Erasmus Freeman's renunciation prevented him from thereafter exercising in conjunction with his wife, the power in question. I do not so understand the law. The power was based on a special confidence, not annexed to an office or engrafted on an estate held by the donees of the power. A person entrusted with such a power cannot extinguish it, but may exercise it notwithstanding his covenant to the contrary.Norris v. Thomson's Executors, 19 N.J. Eq. 307 (at p. 314);20 N.J. Eq. 489.
The next question is whether complainants are barred by the statute of limitations or by laches. Two of the complainants are infants, expressly excepted from the operation of the statute, and not chargeable with laches. Comp. Stat. p. 3614 § 4; Scheel
v. Jacobson, 112 N.J. Eq. 265. The claim of the infants is limited to the corpus of the trust inasmuch as their father, the complainant James F. Clark, is entitled to income during his lifetime. In order to determine whether he is barred, it is necessary to go further into the facts. Pursuant to Mrs. Freeman's attempted annulment of the trust in 1924, she and her son, the defendant Alfred *Page 38 
E. Freeman, as trustees under the deed of 1920, turned the trust fund over to themselves as trustees under the deed of 1917. James came of age October 1st, 1926, and a year or so later inquired of his uncle Alfred concerning the trust which had been created for the benefit of himself and his children. Alfred wrote him February 24th, 1928, stating that the trust had been canceled, and refusing to account. Thereupon, James obtained from the recorder of deeds of Philadelphia copies of the trust deed of 1920, Erasmus Freeman's renunciation of 1921, and Mrs. Freeman's revocation of 1924. These he submitted to a lawyer in Philadelphia for such action as might be advisable. Beyond calling on Alfred, who reiterated that the trust had been revoked, the lawyer did nothing. I surmise that he was waiting for a fee and that James had no money for litigation. On January 25th, 1935, the Philadelphia lawyer turned the papers relating to the matter over to complainant's present counsel and this suit was instituted shortly thereafter.
Meanwhile, the property which had once been held in trust for James was being administered by Mrs. Freeman and Alfred as an integral part of the trust of 1917. In 1931, Alfred resigned as trustee and his sister, Mrs. Lees, was appointed in his stead. But he was reappointed in 1934. Mrs. Freeman died January 30th, 1935. The defendants are Alfred, Mrs. Lees, and the executors of Mrs. Freeman's will.
"The effect of delay in the assertion of rights in a court of equity is not only peculiarly interwoven with and dependent upon the special circumstances surrounding the individual case, but is also measurably dependent upon the nature of the primary right asserted, and also upon the nature of the relief sought. * * * Where the substantive right asserted is the enforcement by acestui que trust of an express and subsisting trust, neither lapse of time nor the statute of limitations will ordinarily be allowed to defeat the relief sought." Cox v. Brown, 87 N.J. Eq. 462.
"But if the trustee denies the right of his cestui quetrust and the possession of the property becomes adverse, lapse of time from that period may constitute a bar in equity." Kane
v. Bloodgood, 7 Johns. Ch. *Page 39 90, 122. "Even in cases of express trust, if the parties have long ceased to act upon or recognize them, courts of equity will not interfere to enforce them." Dean v. Dean, 9 N.J. Eq. 425.
In Kane v. Bloodgood, Chancellor Kent intimated that the statute of limitations applying to actions of debt and account should, by analogy, bar equitable relief to a cestui que trust
six years after the trustee's possession had become adverse. I find no New Jersey case which has adopted this rule, althoughKane v. Bloodgood has been often cited. Our decisions, instead of following the statute in cases of express trusts which are cognizable and enforceable only in equity, deal with delay from the standpoint of laches. Smith v. Drake, 23 N.J. Eq. 302; Young v. Young, 45 N.J. Eq. 27, 40; Bechtold v. Read,49 N.J. Eq. 111; Starkey v. Fox, 52 N.J. Eq. 758; 53 N.J. Eq. 239;Stimis v. Stimis, 54 N.J. Eq. 17; Carter v. Uhlein,36 Atl. Rep. 956. So far as the principal sum is concerned, the failure of James to act promptly does not bar his suit, for it has not prejudiced the defendants. They are answerable to the infants; their liability is not increased by making them also answerable to James. With regard to the income, the defendants may have been prejudiced by the delay, especially if, relying on James' apparent acquiescence they distributed the income to third parties pursuant to the terms of the trust of 1917. For laches in relation to income, see Jones v. Haines, 79 N.J. Eq. 110, andBackus v. Crane, 87 N.J. Eq. 229. The question of laches so far as it affects income, will be reserved until the account has been taken.
The defendants plead certain provisions of the 1917 deed intended to limit the rights of beneficiaries under that trust. These provisions do not bind complainants, inasmuch as they are not beneficiaries or parties to the trust deed. They have no concern with that trust except they discover in the hands of the trustees property which does not rightly belong in the fund but does belong to the trustees under the deed of 1920.
I will advise a decree for an accounting. *Page 40