WILLIAM S. VOORHIES, executor, &c.,

*v.*

WILLIAM OTTERSON.

[Filed February 18th, 1904.]

1. A will ordinarily speaks from the time of the death of the testator. If the expressions of the will indicate that the testator intends that any clause shall speak from a different date, it will be given that effect.

2. If a legacy be given to an individual, not by name or other special designation, but by reference to certain characteristics, at a particular time, the person who has the characteristics at that time is the person entitled to the legacy, and it will then vest in him.

Voorhies *v.* Otterson.

.On bill, &c.  *Ex parte.*

This bill of complaint is .filed by William S. Voorhies, ex-
ecutor and trustee under the last will of Nelson S. Hibbler,
deceased, to obtain a decree instructing the complainant touch-
ing his duty in the performance of his trust in regard to the
payment of certain moneys bequeathed by the will of the de-
cedent.

The will of the decedent testator, Nelson S. Hibbler, is dated
the 15th day of August, 1887. The testator departed this life
on the 8th day of March, 1888, and his will was proven on the
18th day of April, 1888, before the ordinary of the State of
New Jersey, by the complainant, who took upon himself the
burthen of executing it.

The testator, by his will, directs the payment of his debts
and makes certain specific bequests and devises. He then be-
queaths and devises the residue of his real and personal estate
to his executor upon certain named trusts, which are, to pay
certain annuities for ten years after the decease in semi-annual
payments. In the second subdivision of his will he makes the
bequests upon which the executor seeks by his bill in this
cause to be advised. The words of the will raising the ques-
tions here presented are as follows:

"*Second.* Ten years after my decease I hereby direct my executor to
pay [here follows four legacies not affected by this suit]; then

"5. To each of the children of my daughter Josephine Otterson the
sum of two thousand dollars.

"6. The issue of any deceased child to receive the share which the
parent would have received if living.

"7. In case any of the persons entitled to receive any of the moneys,
under this section of my will, are not of the age of twenty-one years, my
executor is to hold the same, in trust, for them, for their use and benefit,
and pay over to them the principal sum as they each arrive at the age
of twenty-one years."

The bill also sets out the seventh subdivision of the testa-
tor's will as follows:

"*Seventh.* Ten years after my decease, and after deducting the above-
named bequests and paying to each grandchild the amounts stated'

above, the balance or residuary part of my estate is to be held by my executor and disposed of as follows:

"The one-fourth part of the net income derived from the same to be paid semi-annually to my daughter Ellen Stryker during her life for her own maintenance and benefit, and after her death the one-fourth part of my estate is to be equally divided between her children or their issue; but in the case of the death of my daughter Ellen, leaving no children or their issue her surviving, then and in that case the said one-fourth part of the residuary part of my estate is to become part and parcel of my estate.

"*Eighth.* Ten years after my decease the one-half of the three-fourths remaining of my residuary estate is to be equally divided between the children of my daughter Emma Voorhies Abernethy, share and share alike, the representatives of any deceased child to have the share of his, her or their parent.

"*Ninth.* Ten years after my decease the net income thereafter derived from the remaining one-half of the three-fourths of my residuary estate is to be paid semi-annually or as soon as practicable to my daughter Josephine Otterson, during her life, and after the death of my said daughter Josephine the principal of the said one-half of the three-fourths of my residuary estate is to be divided equally between the children of my said daughter Josephine, share and share alike, the representatives of any deceased child to have the share of his or their parent. If, however, there be any child or children that have not attained the age of twenty-one years, then and in that case my executor is to retain that child's or children's share, and keep the same invested for the benefit and maintenance of said child or children during their minority, and at the age of twenty-one years the principal belonging, respectively, to them or either of them is to be paid to them."

The bill further alleges that the complainant, as executor, stated his fifth and final account in the prerogative court of this state in the year 1898, which was duly allowed; that, at the time of the making and allowing said account, Josephine Otterson, the daughter of said testator, had the following children living: Mary E., Ada G., Ellen J. and Willetta, all unmarried; and Elizabeth R. Reed, a married daughter. That Ellen Stryker (another daughter of the testator) had two children, Nelson R. Stryker and Joseph G. Stryker, and that the children of Emma Voorhies Abernethy (another daughter of the testator) were Elizabeth R. Abernethy and Mary R. Abernethy and also the complainant in this cause.

The bill further states that, before the accounting above named, the complainant had paid to such of the persons named

in subdivision 2 of the said paragraph 6 of the will as had attained the full age of twenty-one years the specific bequests mentioned in that subdivision of the will, and as trustee thereunder had retained the sum of $2,000 each for Mary E. Otterson, Ada G. Otterson and Willetta Otterson, they then being under the age of twenty-one years.

That said Mary E. Otterson has since become of the age of twenty-one years and the complainant has paid her the said sum of $2,000.

That said Willetta Otterson has recently departed this life, being of the age of twelve years; that Joseph E. Stryker has died since the payment to him of his bequest aforesaid, leaving him surviving Lester Stryker, his son, an infant of the age of about twelve years.

The bill further states that William R. Otterson, the husband of Josephine and father of Willetta Otterson, deceased, insists that, as the next of kin of said Willetta, he is entitled to administer upon her estate and to ask and have the complainant, as executor and trustee, pay to him the said sum of $2,000, held by the complainant for the said Willetta pursuant to the directions of the will of said Nelson S. Hibbler. That Ellen Stryker, Josephine Otterson and Elizabeth R. Abernethy and Mary N. Abernethy insist that the said sum of $2,000 now forms a part and parcel of the residuary estate of said Nelson S. Hibbler and should be distributed among his devisees in the manner in his said will set forth.

The bill further states that the complainant himself has an interest as one of the children of Emma Voorhies Abernethy, mentioned in the will, and that he feels himself unable properly to decide and determine to whom said $2,000 belong. He therefore prays this court to adjudge to whom said moneys are payable, whether to an administrator of said Willetta Otterson, hereafter to be appointed, or to the complainant as executor of the last will of the decedent, Nelson S. Hibbler, to distribute the same as part of his residuary estate, and for further and other relief, &c.

A decree *pro confesso* has been taken against the adult de-

fendants. The infant defendants answer by their guardians *ad litem* and submit their interests to the protection of the court.

Depositions have been taken on notice, under which a certified copy of the will of the deceased, Nelson S. Hibbler, has been offered in proof. The facts narrated in the complainant's bill have also been proven. The cause came on to be heard *ex parte*.

*Mr. James P. Northrop,* of counsel with complainant.

Grey, V. C.

The complainant asks the determination of the effect of the will of the decedent, Nelson S. Hibbler, in making a bequest of $2,000 to Willetta Otterson, one of the children of Josephine Otterson.

Willetta Otterson is shown by the depositions to have been born in the year 1890. The testator's will, a copy of which is offered in evidence, is dated August 15th, 1887. He died March 8th, 1888, and his will was proven on April 18th, 1888. Willetta Otterson was born more than two years after the testator had made his will, and more than one year after the testator had died. Willetta died on December 26th, 1902, which was more than ten years after the death of the testator.

The essential question in the cause is, did the title to the $2,000 legacy vest in Willetta Otterson? Whether it did or did not, depends upon the intent of the testator as expressed in his will.

It is true that Willetta had not come into existence either when the will was made by the testator or when it spoke, at the time of his death, but it should be noted that the testator, in phrasing his intended gift, did not mention any of Josephine Otterson's children by name, and that, although the legacies were bestowed upon them individually and not as a class, yet the sole characteristic required of the several legatees was that each should be a child of his daughter Josephine Otterson. This mode of expressing his purpose shows that, in giving these

legacies, the testator did not have in mind any particular child or children of his daughter Josephine 'whom he wished to benefit, but that he intended to confer these legacies upon each child that Josephine either had or might have. The quality which secured the legatee his favorable consideration was neither age, sex nor present existence. The only thing he required was that each legatee should be Josephine's child. The testator does not limit the number of children who may take. Any number of Josephine's children would, by the mere fact of birth, come within the possibility of meeting the requirement. This included not only those children of Josephine who were in existence when the will was made and proved, but those who might come into being afterwards.

The testator postponed the payment of these legacies until ten years after his death. The words which direct the payment of the legacy at the end of the ten years are the only words of gift. The testator obviously had in contemplation as his beneficiaries all those who might be children of Josephine at the time the gift should mature.

A will in such case speaks not from the time of the death of the testator but from the time when, by the terms of the particular will, the testator intends it shall speak. *Phillipsburgh v. Bruch's Executors, 10 Stew. Eq. 485.*

There is a class of cases in which the testator gives a legacy to a person not as *persona designata* but under a qualification and description at any particular time. In such cases the person answering the description at that time is the rightful claimant. The leading case on the point is *Devisme* v. *Mello, 1 Brown Ch. C. *537;* to the same effect, *Congreve* v. *Congreve, 1 Brown Ch. C. *530; Gilmore* v. *Severn, 1 Brown Ch. C. *582; Ayton* v. *Ayton, 1 Cox Ch. 327; Middleton* v. *Messenger, 5 Ves. 140.* In the last-cited case there was a bequest to testator's wife for life, then an appropriation of a part to answer legacies, the residue was given "to be equally divided among brothers' and sisters' children." Sir Richard Pepper Arden, master of the rolls, approving *Devisme* v. *Mello (ubi supra),* declared that under such a disposition the fund was

divisible not only among those legatees living at the testator's death, but also among such as might be born afterwards but before the fund was distributable, and that the several legacies were vested interests.

The principle that where a legacy is given to a class, or to individuals having certain characteristics, at a certain time, all will be included who answer the description at the time the gift shall take effect, is also declared in a number of cases in this country. *Swinton* v. *Legare, 2 McCord Ch. 440; Myers* v. *Myers, 2 McCord Ch. 256; Jenkins* v. *Freyer, 4 Paige 47; Cole* v. *Creyon, 1 Hill. Ch. 311.*

The words of this will clearly show that the testator intended these legacies to each of the children of Josephine, to vest at the end of the ten years from his death. The words which direct payment are the only words of gift, and the general rule is that under such conditions the vesting takes place when the time of payment arrives. *2 Wms. Ex. *1232; Van Dyke* v. *Vanderpool, 1 McCart. 198.* If there be special circumstances which show that the payment is postponed for the convenience of the estate, the gift may even be held to vest at an earlier period. *Ib.* This exception to the general rule has no application to the terms of this gift unless clause 7, hereinafter referred to, may make it applicable.

The counsel for the complainant suggests that the time when Willetta's legacy became payable to her was not at the end of ten years after the death of the testator but (under clause 7 of the will) when she became twenty-one years of age, and that, as she died before that time, her legacy lapsed and fell into the ultimate residue.

A reading of the will shows that the legacies for each of Josephine's children were in express terms directed to be paid to them ten years after the testator's decease. This direction for payment is the gift of the money, and title to each legacy of $2,000, vested at the end of the ten years. Clause 7 does not indicate a different intent but rather confirms this view. In that clause the testator declares that the issue of any deceased child should receive the share which the parent would have re-

ceived if living.    That means, of course, that if any legatee died before the end of the ten years, leaving issue, that issue should, at the end of the ten years, receive the share to which the parent would then have been entitled had the parent been living at that time.    The next paragraph declares that if any persons entitled to receive any of these legacies are not of the age of twenty-one years, the executor is to hold their moneys "in trust for them for their use and benefit, and pay over the principal sum as they each arrive at the age of twenty-one years."    Here is a declaration of the testator's intent, that at the end of the ten years the legatee should become *entitled to receive* their legacies.    The same thing is indicated by the testator's arrangement for the division of the fund into the several legacies at the end of the ten years.    The direction that the moneys to which any minors might be entitled should be held by the executor in trust, does not indicate any purpose to postpone the gift, for the trust did not preserve the property for any other person, but only prescribed the manner in which the money, now the property of the infant legatee, should thereafter be cared for.    The infants, at the end of the ten years, became entitled in the sense that their title to their legacies then vested, but the executor was to hold their moneys *in trust for them for their use and benefit.*

This provision, taken in connection with the subsequent reference to the payment of the "principal sum," shows that the testator intended that title to the legacy should be in the infant legatees, but that the trustee should use the income from the legacy of each minor legatee for his or her support during the minority, and should pay over the principal sum of the legacy when the infant arrived at full age.

The effect of these provisions of the will was, that the infant legatees became, at the end of the ten years after the testator's death, entitled to the sole beneficial use of the income from their legacies, with the right to have the principal sum delivered to them when they came of age.    The postponement of delivery of the principal sum of the legacy was obviously for the convenient management of the property, and is within the

principle above noted, that such a postponement will not prevent a vesting.

Under this construction of the effect of the testator's legacy to Willetta Otterson, the equitable title to that legacy vested in Willetta at the end of ten years after testator's death. This period was March 8th, 1898. Willetta was then alive and received the title to her legacy. She afterwards died under the age of twenty-one years. From and after March 8th, 1888, when the equitable title to the $2,000 and the right to the use of the income from it vested in her, the executor held it in trust for her benefit. As she died before she came of age, her legacy, like any other property of an infant decedent, would go, after due course of administration and ascertainment of the surplusage, to her next of kin.

I will advise a decree instructing the executor according to the views above expressed.