# HENRY F. HILL ET. AL. vs. THE SAFE DEPOSIT AND TRUST CO., EXECUTOR.

*Construction of a Will—Power of Appointment to be Exercised by the Unmarried Survivor of two Devisees.*

In the construction of a will the word *survivor*, when not explained and controlled by other parts of the instrument, is to be interpreted according to its ordinary meaning as indicating the one who outlives another, and cannot be construed as meaning the *other*, although such adherence to the literal meaning of the word may result in a partial intestacy.

By the residuary clause of her will, a testatrix gave certain property to her daughters, Isabella and Lucy and the survivor of them, so long as they remain single and unmarried. Testatrix directed "that the survivor of my said daughters, Isabella and Lucy, being single and unmarried until the time of her death, shall have full power and authority to dispose of the property herein given to her by her last will and testament absolutely in her discretion, and that if she fail or neglect thus to dispose of it, the same shall, after her death, belong to her heirs at law." The daughter Lucy married and some years afterwards Isabella died unmarried, leaving a will by which she attempted to dispose of the property. Her sister Lucy was then still living. There was in the will no limitation over on the contingency which occurred, *i. e.*, the marriage of one of the daughters and the death of the other, unmarried, in the lifetime of the one who married. *Held*, that the power of appointment could only be exercised by the daughter who was at the time of her decease the survivor of the two and who was also then unmarried, and that since Isabella died, unmarried, before her sister, her will cannot operate as an execution of the power, inasmuch as one of the two conditions prescribed for its exercise did not exist, and the word *other* cannot be substituted for the word *survivor*.

Appeal from the Orphans' Court of Baltimore City.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*William B. Levy*, for the appellant.

*John William Marshall* (with whom was *D. K. Este Fisher* on the brief), for the appellee.

McSherry, C. J., delivered the opinion of the Court.

Martha E. Tyson, who departed this life sometime in the year 1883; left a last will and testament and by the residuary clause she gave the rest and residue of her estate to her two daughters, Isabella and Lucy, and the survivor of them so long as they or the survivor respectively remained single and unmarried; and after making other dispositions which will be alluded to later on the residuary clause proceeds to declare: "Whereas my daughters, Isabella and Lucy Tyson, or the survivor of them being single and unmarried may wish during their lives to sell or dispose of all or a portion of the residue of my estate for the purpose of changing the investment thereof, I hereby authorize them to do so.  *  *  *  The proceeds of sale, however, in such case to be received by my executors hereinafter named and to be by them reinvested in the name of my said daughters or the survivor of them being unmarried and to be held subject to the provisions and for the purpose herein expressed in relation to the residue of my estate.  *  *  *  And I further direct, in the event, that both of my said daughters, Isabella and Lucy Tyson, shall choose to marry that my executors hereinafter named the survivors and survivor of them, shall after the marriage of both of my said daughters sell and dispose of the entire residue and remiander of my estate  *  *  *  *And it is further my will that the survivor of my said daughters, Isabella and Lucy Tyson, being single and unmarried until the time of her death shall have full power and authority to dispose of the property herein given to her or of any reinvestment thereof, by her last will and testament absolutely in her discretion and that if she fail or neglect thus to dispose of it, the same shall, after her death, belong to her heirs at law."*      The daughter Lucy married before the death of her mother, but after the date of her mother's will.  In 1897, the other daughter, Isabella, executed a last will and testament to which are appended two codicils, one made in 1900 and one made in 1901.  Isabella died on the 1st of February, 1903, without ever having married.  By the provisions of her will, she constituted the Safe Deposit and Trust Company of

Baltimore, executor, and gave to it the power to divide her estate and the estate over which she had a power of appointment into three equal parts, and to effect that end, the executor so named was authorized to make sale of all the property which passed under her will.    In the exercise of that authority, the Safe Deposit and Trust Company sold a dwelling house situated on Madison avenue in Baltimore to the appellant, Henry F. Hill, and reported the sale to the Orphans' Court of Baltimore City.    This house was part of the property devised by the residuary clause of her mother's will and formed part of the property to which the power of appointment applied.    Thereafter the purchaser filed objections to the ratification of the sale, alleging that the executor of Isabella's will was unable to convey a good and marketable title, because Isabella had no power under the terms and provisions of her mother's will to dispose of the property in the manner that she did, inasmuch as she had not survived her sister, Lucy, who was then, and still is, living.    These objections were overruled, and on the 22nd of December, 1904, the Orphans' Court of Baltimore City ratified and confirmed the sale. From that order the appeal now before us was taken.

The pending controversy has grown out of that provision in the will of Martha E. Tyson, which we will cause to be printed in italics?    It will be observed that by the provision just indicated, the *survivor* of the two daughters, Isabella and Lucy Tyson, *being single and unmarried*, was given full power and authority to dispose of the property therein referred to, and to dispose of it by last will and testament, upon the concurrence of the two conditions that are there named.    The daughter who was clothed with this power was the one who would answer the description given in the will, that is, the one who was, at the time of her decease, the *survivor* of the two *and* who was also then single and unmarried; otherwise the power could not be exerted by her, unless other provisions of the will show that the word survivor was used in some different sense from that of the longer liver.    The contention on the part of the appellees is, that Isabella, the one of the sisters, who died first,

is to be treated as the survivor of the two, notwithstanding Lucy is still living; and it is insisted that she must be regarded as the survivor because when she died she was single and her sister was married. That is to say, the one who is dead is to be treated as the survivor of the one who is living, though in fact the latter is alive; and the one who is living must be considered as having died when she married simply because she did marry, although she is still living. Without ascribing to the term, "*survivor* of my said daughters, Isabella and Lucy,*" a meaning different from its ordinary signification, it is impossible to hold that the one dying first had the power to make a testamentary disposition of the property, merely because at the time she executed her will, and at the time she died, she was single and unmarried. It would, in the absence of controlling circumstances, require a forced and unnatural meaning to be given to the word survivor if it were held to signify, not the longer liver of the two, but the one who departed this life first. In 27 *Am. & Eng. Ency. L.* (2 ed.), 555, it is said: "To survive means simply to remain in life after the death of another, or after a particular date or the happening of a particular event. The primary meaning of the word 'survive' is to live beyond the life or existence of; to outlive; but it has according to some lexicographers, a secondary meaning, viz: to live after. In its ordinary as well as its legal signification, the word 'survivor' means one who outlives another; one of two or more persons who lived after the other or others have died." The mere inconveniences which may result from giving to the word 'survivor' its ordinary and its legal meaning cannot be permitted to override that meaning, and cannot warrant an interpretation or definition of it which attributes to it a distinctly opposite signification. Such considerations would not be sufficient to justify that course. No matter how unfortunate a situation may become in consequence of the application of the usual and ordinary meaning of the term *survivor*, Courts are obviously not justified in judicially declaring that the survivor of two persons is the one who has died first; unless it clearly appears either by an expressed declaration or

by a strong and controlling inference, that the testator employed the word to convey a meaning different from that which it usually bears.

It is stated in 3 *Jarman on Wills* (5 Am. ed.), 538, that whether the word "Survivor" is to receive a construction accordant with its strict and proper acceptation, or is, by a liberal interpretation to be changed into *other*, is a point which has been often discussed and variously decided. On more than one occasion expressions have fallen from eminent Judges calculated to create an impression that the term *survivor* might by its own inherent force, and without one single ray of light from the surrounding context, be read as synonymous with *other*. In particular Sir W. Grant in *Barlow* v. *Salter*, 17 Ves. 479, seems to have assumed this point; and the construction recommends itself so forcibly, as carrying into effect the probable intention of the testator, and as supplying a defect or inaccuracy of expression very commonly to be found in testamentary instruments, that it appears to have obtained too ready an acceptance in the profession, for we are now taught by a series of decisions, which outweigh any opposing *dicta* or opinions, that the word "survivor," like every other term, when unexplained by other parts of the will, is to be interpreted according to its strict and literal meaning.

It may not be out of place to cite a few cases by way of illustration. Thus, in *Aiton* v. *Brooks*, 7 Sim. 204, it appeared that a testator had bequeathed fifteen hundred pounds in stock to A and B during their lives, in equal shares, and immediately on the death of either he directed his trustees to pay the share of such deceasing legatee to her children who should be living at their mother's decease, and who should attain the age of twenty-one years, the interest in the meantime to be applied for maintenance; but in *case* any of such children should die before they should attain the age of twenty-one years, the testator gave the share of such deceasing child to the *survivor;* provided, always, that in case either of them, the said A and B, should leave any child living at their respective deceases, but which should all die before they

attained the age of twenty-one years, then the trustees were to assign the share of such legatee so dying unto the *survivor* of them the said A and B, her executors or administrators. A died in the lifetime of B, leaving a child who attained twenty-one; B afterwards died without issue. SIR L. SHAD-WELL, V. C., held A to be entitled to B's moiety, observing, "the word *survivor* must of necessity be taken to mean *other*, for the testator contemplated the event, not of one of the legatees dying in the lifetime of the other, *but of one of them dying childless.*"

So in *Wilmot* v. *Wilmot*, 8 Ves. 10, a testator bequeathed one-third part of his property to each of his three children, payable at a certain age, and if either of them died before that age his share to be divided between the two surviving children; and in case of two dying before attaining the said age respectively, then the whole to go to the *surviving* child; but if all his children should die before they should attain their said respective ages, then over. One child attained the age and died; then another died under age; and the personal representative of the first was held by LORD ELDON to be entitled to share with the survivor the portion which went over on the death of the second. The Lord Chancellor said: "It must be argued that the word *survivors* means the same as *others*, or living at the age aforesaid. In the clause in which the gift over is made it was never meant that any portion should be taken; it was to be either the whole or none." It was held by SIR R. MALINS, V. C., *In re Arnold's Trusts*, L. R. 10 Eq. 252, that the ultimate gift over was not indispensable in these cases to the construing of "survivors" as *others;* and that *Milson* v. *Awdry*, 5 Ves. 465, which decided the contrary was, in his opinion, erroneous. But that view of the Vice Chancellor is not in accord with the judgment of the Court of Appeal in *Wake* v. *Varah*, 2 Ch. D. 348. BAGGALLAY, L. J. laid it down that although the literal interpretation of "survivor" might involve the imputation of a capricious intention and might lead to intestacy, this alone would not justify the Court in interpreting the word otherwise; it was the ultimate

gift over which supplied the necessary evidence of such an intention as could only be effectuated by construing the word as "other." In *Anderson* v. *Brown*, 84 Md. 271, this Court followed the ruling in *Wake* v. *Varah*, and quoted with approval the following resume of all the cases from *Jarman on Wills:* "It may, therefore, apparently be taken as settled, with regard to the class of cases now under consideration, that in order to read the expression 'survivors' as meaning 'others,' there must be a gift over, or some other indication of a manifest intention to oust the ordinary interpretation."

It is stated by Mr. Jarman, vol. 3 (5 Am. ed.) 550, that "Intestacy in a possible event is insufficient ground for reading the word otherwise than literally. And a mere residuary gift, which only prevents intestacy but shows no intention to dispose completely and in a mass of the particular property, will not supply the place of an ultimate gift over." It may be stated as a result of all the many cases on this vexed question that the words survivor, survivors, &c., are to be confined to their literal signification when it is possible to do so without violating the clear meaning of the rest of the will. 27 *Am. & Eng. Ency. L.*, 558, and the numerous cases English and American in note 1. In *Turner* v. *Withers*, 23 Md. 40, an effort was made to induce this Court to adopt the view that survivors meant others, but the case was decided on other grounds. In *Anderson* v. *Brown, supra,* we said: "All the cases to which we have been referred or (which we have) examined in which 'survivor' has been construed as the equivalent of 'other' appear to have been so decided because there was something in the will to make it clear that the testator intended the issue of predeceased children to take, or that some other clearly expressed intention would otherwise be rendered inoperative."

With these fundamental principles in view we have only to examine the provisions of Martha E. Tyson's will to ascertain whether its terms and the intention clearly expressed on its face bring it within that class of cases in which the word *survivor* has been read to mean *other*. The first item of the

will has no bearing on the subject. The second item disposes of certain property to which the testatrix acquired the equitable title under the will of her father, and certain other property to which she became entitled under the will of her husband. She directed all of the property just indicated to be sold by her executors and the proceeds to be divided between her children living at the time of her death and the issue of such child or children as might then be dead. It is obvious that this clause has no connection with the question now under consideration. In the third item she states that her sons —whom she names—are already provided with the means of a comfortable living, and that they do not require pecuniary aid from her, and she then gives to her two married daughters Elizabeth and Annie, legacies of one thousand dollars each to be paid in the way she pointed out. There is nothing in this clause to indicate that she used the word survivor erroneously for the word other. It is true that the clause clearly manifests that it was her intention to exclude her sons from participating in that portion of her estate with which the third clause dealt. Next comes the fourth, or residuary clause, from which some extracts have already been made in the outset of this judgment. The introductory paragraph will now be transcribed. It is as follows:

"Item 4th. I give, devise and bequeath all the rest, residue and remainder of my estate, real, personal and mixed, of which I may die seized or possessed including the house and lot of ground fronting on Madison avenue, in said city, in which I now live, which with all its contents was a special gift to me from my husband and including also the balance or remainder, if any, of the proceeds of sale of the house and lot of ground fronting on Lombard street, as above mentioned, unto my two daughters, Isabella Tyson and Lucy Tyson, and the survivor of them, so long as they may remain single and unmarried, subject, however to the payment out of the income arising therefrom, of the legacies of one thousand dollars above given to each of their sisters, Elizabeth B. Smith and Annie T. Kirk, in semi-annual installments as aforesaid, and

from and after the marriage of either of my daughters, Isabella Tyson or Lucy Tyson, I direct that the other who may remain single or unmarried, shall have the whole so long as she remain unmarried, subject, however, to the further payment by her out of the annual income arising therefrom, in semi-annual installments of two hundred and fifty dollars each, counting from the date of such marriage, of a legacy of one thousand dollars, to her sister Isabella or Lucy Tyson, whichever may first marry, the said payments to be made without interest, and continued until the sum of one thousand dollars to be paid."

In the same clause, but in a succeeding paragraph, the testatrix, provided for the contingency of the marriage of *both* of her single daughters by declaring that in such event the residuum should be equally divided *per stirpes* between the four daughters and the issue of those of them who might be dead. Then follows a power of sale conferred upon Isabella and Lucy, "Or the survivor of them, being single and unmarried," for the purpose of re-investing. The next and last paragraph of the residuary clause is the one we have put in italics at the outset of this judgment.

Apparently, every contingency that might have occurred has been provided for save and except the one that has actually happened. There is no disposition made of the residuum upon the marriage of one of the single daughters and the death of the other during the lifetime of the one who married. It is declared that if the survivor being single and unmarried shall die without exercising the power of appointment the residue "shall after her death, belong to her heirs at law." But that is not the event which came to pass. There is no limitation over of the estate in any way to any person should one of the daughters marry and the other die unmarried during the life of the one who married. As there is no limitation over on the contingency which has now become a reality, and in fact no limitation over at all except in the event that the survivor, who being single, should die without exercising the power of appointment, the very clue which would warrant the

Court, in substituting the word "other" for the word "survivor,"
is wanting.   And that clue, which is considered as the *ratio de-
cidendi*, LORD JUSTICE BAGGALLAY found in going through the
cases was supplied by *Waite* v. *Littlewood*, L. R. 8, Ch. 70,
and *Badger* v. *Gregory*, L. R. 8 Eq. 78, viz., the ultimate gift
over.

There is but one reason left to support the contention of
the appellee, namely, that the literal meaning of the word sur-
vivor will, if adopted in the circumstances that have come to
pass, produce an intestacy on the part of Martha E. Tyson as
to and in respect of the residuum of her estate.  It is true there
is a presumption that a testator does not intend to die intes-
tate, especially where there is a residuary clause in the will,
and the Courts will generally struggle against adopting an in-
terpretation which would lead to that result; but as already
indicated in the citations from Jarman, and from the judgment
in *Wake* v. *Varah, supra*, the consequences arising from an
intestator are not considered sufficient to indicate that the word
survivor was designed by the testator to be synonymous with
the word other.   In the contingency of the surviving single
daughter dying without exercising the power of appointment
(which is provided for) the residum was limited over to "*her*
heirs at law;*" and there is nothing in the record to show that
they are not the same persons who would take as the distrib-
utees and next of kin of Martha E. Tyson in the event of there
being an intestacy as to the residuum of her estate.  We can-
not, according to the adjudged cases, read the word *survivor*
to mean *other*, merely because a failure to do so will occasion
an intestacy.   In *Crowder* v. *Stone*, 3 Russ. 217, LORD LYND-
HURST observed:   "It was contended that the words survivor
and survivors of them were to be construed other and others.
That is a construction which the Court has, in some cases,
put upon those or similar words; but it is what LORD ELDON
in *Davidson* v. *Dallas* (14 Ves. 578), calls a forced construc-
tion of the term survivor, and he contrasts it with what he
calls its natural meaning."   And in *Waite* v. *Littlewood, supra*,
LORD SELBOURNE said he thought there was a strong proba-

bility that any one using the word "survivor" did not precisely mean "other" by it, but had in his mind some idea of survivorship, though it was imperfectly expressed; and that simply to read the word as "other" was an unwarrantable alteration of the testator's language and meaning.

In the absence of all the circumstances which in other instances have induced the Courts to substitute the word *other* for the word *survivor*, and without doing violence to the language we have quoted from Martha E. Tyson's will, it is impossible to hold that the one of the two sisters who died first can be treated or considered as the survivor of the other; or that she possessed and validly exercised the power of appointment conferred, in explicit terms, upon the surviving *and* single sister.    Isabella did not fulfil[1] the *two* conditions prescribed in her mother's will.    She was single but she died and Lucy survived.    Unless *both* conditions are gratified the power of appointment cannot be exercised.    As the single sister is dead and the surviving one is married there is no one upon whom the power of appointment can devolve.    Isabella's attempted exercise of it was futile and the executor named in her will possesses no power to sell and convey the property which is subject to the power.    It follows that the order of the Orphans' Court in overruling the exceptions filed by the purchaser and in ratifying the sale was erroneous and must be reversed.    It is accordingly so ordered.

> *Order reversed with costs above and below; and exceptions sustained.*
> *Cause remanded.*