The bill in this cause prays a construction of the will of Henry N. Supp, deceased, and a declaration of the complainants' rights thereunder. *Page 243 
The complainant Harry L. Supp is the son of the decedent, and the father of the complainants Margaret Elizabeth Supp, Muriel Dorothy Supp and Harry Ludlow Supp, Jr., grandchildren of the decedent. From the pleadings and stipulation of facts it appears that Henry N. Supp died on March 9th, 1920. His will, which was duly admitted to probate after his death, was dated February 4th, 1920. The fifth clause of said will, which is the only portion thereof in controversy, and a construction of which clause only is necessary in this case, reads as follows:
"Fifth. I order and direct my executors hereinafter named, or the survivors or survivor of them, within one year after my death, to pay to Second National Bank of Red Bank, body corporate, as trustee, the sum of twenty-five thousand dollars [$25,000], should I be the owner of twenty-five thousand dollars par value of United States Liberty or Victory Bonds or other obligations of the United States of America at the time of my decease, then, in lieu of cash, I order and direct my said executors to turn over to said trustees the sum of twenty-five thousand dollars in such obligations of the United States at the par value thereof, without, however, any deduction for inheritance tax. I specifically charge that the inheritance tax on the said sum of twenty-five thousand dollars is to be paid out of my residuary estate. My said trustee, the aforesaid Second National Bank of Red Bank, body corporate, in the event that it accepts this trust, shall tender my executors hereinafter named, or the survivors or survivor of them, an ordinary release and refunding bond, duly acknowledged, which bond shall recite that said trustee undertakes to perform the trust hereinafter created. The trust upon which my said trustee is to hold said fund of twenty-five thousand dollars is as follows: To keep said bonds under the conditions hereinafter provided, and to collect the interest and income therefrom, and to pay said interest and income twice each year to my grandchildren in the following proportions: Alice Mary Clayton, daughter of James and Alice Clayton, two portions; Margaret Supp, Muriel Supp and Harry Supp, children of my son, Harry L. Supp and wife, each one portion, making five portions in all. Should any of said grandchildren predecease me, leaving no issue, then my surviving grandchildren shall take the share of such grandchild. Should any other grandchildren be born after this date, and survive me, each grandchild so born and so surviving me, shall likewise take one portion of said interest, the intent always being, however, that my granddaughter Alice Mary Clayton shall have two portions or moieties. My trustee, or its successor or successors, shall pay the share to the parent, parents or guardian of each grandchild until such grandchild attains the age of seventeen years, and the receipt or release in writing of such parent, parents or guardian of such grandchild shall be sufficient to *Page 244 
exonerate my said trustee from all further claim to said interest or income due to such grandchild.
"After each grandchild attains the age of seventeen years, said interest is to be paid direct to such grandchild until each grandchild attains the age of thirty years, and the receipt of such grandchild for such interest and income, after attaining the age of seventeen years, shall be sufficient to release and exonerate my said trustee, or its successors, from all liability notwithstanding the fact that such grandchild may not have attained the age of twenty-one years at the time of giving such receipt. As each of my said grandchildren respectively attain the age of thirty years they shall be paid, each of them, their share of the principal of twenty-five thousand dollars, the understanding always being, however, that my granddaughter Alice Mary Clayton shall receive two portions or shares of such principal. Should any of my grandchildren die before attaining the age of twenty-one years, leaving no issue, the surviving grandchildren shall take the share of such grandchild in the principal of my estate. Should, however, any grandchild depart this life before attaining the age of thirty years, leaving issue, such issue shall receive the share their parent would have been entitled to if living, at such time as the parent, if living, would have received when said parent attained the age of thirty years; until such time such descendant, by its parent or guardian, may receive interest in like manner as the parent would have received if living. This trust shall cease and determine when the last of said grandchildren shall have attained the age of thirty years, or in the case of a grandchild dying before attaining the age of thirty years and leaving issue, at such time said grandchild if living would have attained the age of thirty years. I give my trustee aforesaid full power and authority, in the event that this trust shall continue after any of said obligations of the United States have matured, to invest and from time to time reinvest the said fund in any bonds of the United States of America, or on bond and mortgage on improved real estate worth to the extent of sixty per cent. of true value, or in any municipal bonds. In the event that both parents of any of said grandchild should depart this life before said grandchild attains the age of seventeen years, then I give my said trustee full discretion to expend said interest for the benefit of such grandchild in such manner as to my said trustee shall seem meet and proper until the said grandchild attains the age of seventeen years, and the reasonable exercise of such discretion shall completely exonerate my said trustee from all claim or liability for such interest and the application thereof."
Prior to the date of the death of the testator the following-named grandchildren had been born and were living on said date: Margaret Elizabeth Supp, born February 28th, 1913; Muriel Dorothy Supp, born January 30th, 1914; Harry Ludlow Supp, born November 17th, 1916; children of testator's son, Harry L. Supp, the complainant; Alice M. Clayton, *Page 245 
born October 26th, 1912, daughter of testator's daughter, Alice L. Clayton.
On May 11th, 1924, another child, James L. Clayton, Jr., was born to testator's daughter, Alice L. Clayton, and her husband, James T. Clayton.
The defendant Second National Bank and Trust Company has accepted the trust created by the fifth clause of said will, as above recited, paid the income therefrom to Harry L. Supp, and James Clayton and Alice Clayton, parents of the deceased grandchildren, up to December, 1924, in the following proportions, to wit: To Harry L. Supp, for the benefit of his three children, three-fifths of said income; to James and Alice Clayton, for the benefit of their daughter, Alice, two-fifths of said income. In December, 1924, that being the end of one of the six months' periods for distribution of income, the defendant trustee divided said income into six parts and paid three-sixths thereof to Harry L. Supp for the benefit of his children and three-sixths thereof to James and Alice Clayton for the benefit of their two children, two-sixths of the part paid to James and Alice Clayton being for the benefit of their daughter Alice, and one-sixth being for the benefit of James L. Clayton, the grandchild of testator, born some four years after testator's death.
This bill was filed March 26th, 1925.
It is contended by the defendant that the fifth clause of said will creates a trust fund for a class of descendants of the testator, namely, his grandchildren; and that all grandchildren born after the death of the testator, as well as those born before his death, are entitled to participate in the benefits of said trust, and that, therefore, the trustee was right in dividing the income into six parts after the birth of a son to James and Alice Clayton in May, 1924, and paying one part to them for the benefit of said son.
On the other hand, the complainant contends that said trust was not created for a class, but for certain named individuals who were grandchildren of the testator; or, if for a class, then that that class was determinable at the death of the testator and not afterwards, and that, therefore, James L. Clayton, *Page 246 
the infant son of James and Alice Clayton, is not entitled to participate in said trust fund. It is also contended by the complainant that to admit grandchildren of the testator, born after his decease, in the participation of benefits of this fund, would result in the postponement of the ultimate distribution of the corpus of the trust to a point where it would be violative of the rule against perpetuities.
It would seem to me that the answers to the questions raised by this proceeding depend primarily upon the construction of that portion of the fifth clause of said will which reads as follows:
"Should any other grandchild be born after this date andsurvive me each grandchild so born and so surviving me shall likewise take one portion of said interest." (Italics are mine.)
Of course, the will must be read from its four corners, and in construing a will the object to be attained is to determine the intent of the testator as gathered from the whole document as applied to the testator's situation (Coffin v. Watson, 78 N.J. Eq. 307; Trustees of Princeton v. Wilson 78 N.J. Eq. 1); and while a cardinal rule of the construction of wills is to arrive at testator's intention, in seeking that intention the language of the will must be construed in the light of the interpretations adopted by the courts. Wills v. Wills, 73 N.J. Eq. 733. The testator is presumed to have framed his bequest in view of the general rules of construction established by the courts, and any intention at variance therewith, to be recognized, must be clearly indicated, and is not to be imputed from assumed purposes or a fancy as to what the testator really meant, formed from other provisoins. Bonnell v. Bonnell, 47 N.J. Eq. 540.
The words of a will should generally be given their common and ordinary meaning unless there is something in the text which requires that a different meaning be given them. Holcombe v.Lake, 24 N.J. Law 686; Stout v. Cook, 77 N.J. Eq. 153;Woodruff v. White, 79 N.J. Eq. 225.
A will ordinarily operates from the time of the death of the testator. Lanning v. Cole, 6 N.J. Eq. 102; McCoury v. *Page 247 Leek, 14 N.J. Eq. 70; Inhabitants v. Bruch, 37 N.J. Eq. 482;Voorhies v. Otterson, 66 N.J. Eq. 172.
The first point to be determined, it seems to me, is whether or not the trust created by the fifth clause of the will was for the benefit of certain individuals or for a class. In Graves v.Graves, 94 N.J. Eq. 268, Chancellor Walker held that a gift to a class arises where the gift is of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time and who shall take in equal or otherwise definite proportions, the share of each being dependent upon the ultimate number of persons. See, also, In re HelmeEstate, 95 N.J. Eq. 197; Clark v. Morehous, 74 N.J. Eq. 658;Aitken v. Sharp, 93 N.J. Eq. 336.
The "time" of the gift I take to mean the time when the gift becomes effective, which is undoubtedly upon the death of the testator. The will could not become effective until that time, and, therefore, there was no gift until the will operated upon the subject-matter. See McCoury v. Leek, supra; Lanning v.Cole, supra; Voorhis v. Otterson, supra.
Here, the gift was to the individuals who made up the list of grandchildren of the testator at the time of his death, all of whom, it appears, were specifically mentioned by name in the will. The number of this body of persons was certain at the time the gift took effect. But, if the "time" of the gift refers to the date of the will, and not to the time when the gift was to become effective, and the gift was to a class, some of the members of which were specifically named, the class was determinable upon the death of the testator, unless the words "any other grandchild born after this date and surviving me" included grandchildren born after the date of the testator's death, and on this point turns the whole question of the construction of this will.
It will be noted that this sentence is in the conjunctive. There can be no question that under the words "be born after this date," any grandchild born at any time, either before or after the death of the testator, and subsequent to the date of the will, would be included; but the testator has added the words "and survive me," thereby qualifying and limiting *Page 248 
the grandchildren to whom he refers to those who shall survive him; and, therefore, the meaning of the word "survive," as used in this sentence, is pertinent. The Standard Dictionary defines the word "survive," "to continue to live or exist beyond the life or existence of; outlive; outlast;" and the word is defined in37 Cyc. 627 as "a word which may mean either to outlive a certain person or event, or be living still or to be living at some designated period of time; to outlive; that is, to be alive at the time of a particular event or the death of a particular person, which event or person the other is to survive; primarily, to live beyond the life or existence of; to outlive."
Applying these definitions to the word as used in this will, there can be no question as to the person or event which the grandchildren referred to are to survive. The person is the testator, because he has said so when he used the word "me" following the word "survive," and the event is unquestionably the testator's death. In arriving at this conclusion, the language of Lord Halsbury in Inderwick v. Tatchel (1903), A.C. 120; 72L.J. Ch. 393 (a case much cited in our reports), is quite apropos. In that case, he said: "I cannot help saying that the word `survivor' is a word which requires a context. Survivor of whom? Survivor when? Those are both categories of thought which must be supplied in order to give the word `survivor' any meaning at all. It may mean the survivor of the testator; it may mean the survivor at the time of some event contemplated by the will which is being discussed; what it is must be found out by reference to the context."
But here we are not left in doubt. The testator himself has supplied the answers to Lord Halsbury's questions, "Survivor of whom? Survivor when?" There is not the slightest doubt in my mind but that in using this language the testator meant to include in the number of the beneficiaries of the trust fund created by the fifth clause of his will only those grandchildren who should be living at the time of his decease. See, also, Stone v.Bradlee, 183 Mass. 165; 66 N.E. *Page 249 Rep. 708; Hill v. Safe Deposit and Trust Co., 101 Md. 60;60 Atl. Rep. 446.
But counsel for the defendants strenuously insist that a consideration of the whole of the fifth clause of said will can lead to no other conclusion than that the testator intended to include not only such of his grandchildren as might be alive at his death, but also the infant son of James and Alice Clayton, born May 11th, 1924, four years after the testator's death, as well as any other grandchildren who might be born thereafter and prior to the final distribution of the corpus of the trust, and this necessitates an analysis of the clause of the will under discussion.
It will be noted that this clause provides that the trustee is "to keep said bonds under the conditions hereinafter provided, and to collect the interest and income therefrom and pay said interest and income twice each year to my grandchildren in the following proportions: Alice M. Clayton, daughter of James and Alice Clayton, two portions; Margaret Supp, Muriel Supp and Harry Supp, children of my son, Harry L. Supp, and wife, each one portion, making five portions in all."
Then follows the provision for grandchildren born after the date of the will and surviving the testator, the language continuing: "The intention always being, however, that my granddaughter Alice Mary Clayton shall have two portions or moieties." The trustee is to pay the income from this fund to the parents of the grandchildren twice each year until the grandchildren severally arrive at the age of seventeen years. As and when each grandchild attains age seventeen, the income is to be paid to such grandchildren individually until he or she arrives at age thirty; and as and when each grandchild attains age thirty, he or she is to receive his or her share of the principal. The trust, as to such grandchildren arriving at age thirty, is to thereupon cease and determine, and the trust continues for the remaining grandchildren who have not arrived at age thirty. But, in any event, Alice M. Clayton is to receive two shares; that is, irrespective of *Page 250 
how many grandchildren might be alive at the testator's death, and irrespective of how many shares the corpus of the said trust estate might necessarily be divided into. In the event of the death of any grandchild before age twenty-one, without issue, the surviving grandchildren are to take such deceased grandchild's share. The meaning of the word "survivor" as used here, is, to my mind, entirely different from the words "survive me," as used by the testator in referring to those grandchildren who should participate in the fund. Here, the word "survivor" refers to those grandchildren of the class named by the testator, the members of which were determined at his death, who should survive the grandchild or grandchildren dying before arriving at age twenty-one and leaving no issue. No provision is made for disposition of the share of any grandchild dying after twenty-one and before thirty without issue.
The terms of the trust fund provide that if any grandchild dies before arriving at the age of thirty years, leaving issue, that issue is to take the parent's share at the time the parent would have received it, and, in the meantime, such issue would receive the parent's share of the income. While the final determination of the trust is fixed at the date "when the last of said grandchildren shall have attained the age of thirty years," the trust determines in part, at least, as and when each grandchild attains age thirty, a portion of the trust fund being distributable at that time and the trust continuing as to the balance. It will be noted that wherever the testator refers to grandchildren, after designating by name the grandchildren who should participate in the trust fund as his then living grandchildren and other grandchildren born after the date of his will and surviving him, he refers to them as "such grandchild" or "said grandchildren." This language is used almost invariably, and the words "said" or "such" undoubtedly refer to those grandchildren who were included in the class determinable at the testator's death, all the members of which class, as it turns out, were specifically named in the will. Therefore, any construction of the *Page 251 
words "survivor" or "surviving," as applied to the grandchildren of the testator, has no bearing on the interpretation of the meaning of the words "born after this date and survive me" above referred to.
It is plain that if James L. Clayton, the infant son of James and Alice Clayton, born on May 11th, 1924, four years after the testator's death, is now permitted to participate in the benefits of this trust fund, then, if there are still other grandchildren born, they also must be permitted to participate. It appears from the stipulated facts that Harry L. Supp, the complainant, was born on June 15th, 1881; that his wife, Bertha Supp, was born on July 1st, 1884; that the defendant Alice Clayton was born August 13th, 1889, and that her husband, the defendant James T. Clayton, was born July 18th, 1890. It is perfectly plain, therefore, that there is a strong probability of additional grandchildren being born, even before Alice M. Clayton, the eldest grandchild now living, attains age thirty, and the possibility of additional issue of the son and daughter of the testator will be extinguished only by their death. Graves v. Graves, 94 N.J. Eq. 268
(at p. 273).
Admitting, therefore, this possibility of additional issue, it then becomes pertinent to inquire what will happen if the grandchild James L. Clayton is now permitted to participate in this fund. From the foregoing recital of the ages of the children and grandchildren of the testator, it will be seen that the granddaughter Alice will be thirty years of age in 1942; that at that time her uncle, Harry L. Supp, the complainant, will be sixty-one years of age. Margaret will arrive at age thirty in 1943 and her father will then be sixty-two. Muriel will arrive at age thirty in 1944 and her father will then be sixty-three years of age. Harry will be thirty in 1946 and his father will then be sixty-five years of age. As the doctrine of possibility of issue is "even more cogently applicable to men," as was said by Chancellor Walker in Graves v. Graves, supra, it is only necessary to consider the possibility of Harry L. Supp's issue. If *Page 252 
we assume for the moment that no additional grandchildren will be born until after October 26th, 1942, when Alice would be entitled to receive her share of the principal, assuming that the grandson James is permitted to participate in this fund, four-sixths of the principal of the trust would remain. Then, suppose another grandchild is born to the complainant and his wife prior to February 28th, 1943, when Margaret would become thirty years of age. Margaret would then receive, as her share of the principal, one-fifth of the remaining four-sixths, or four-thirtieths. Similar hypothetical cases might be considered almost adinfinitum, and the result would, to my mind, be ridiculous. It is plain that if the grandchildren who are to participate in this fund are determined at the death of the testator, then the grandchildren who were then alive would receive the following shares of the principal on arriving at age thirty: Margaret, $5,000; Muriel, $5,000; Harry, $5,000; Alice, $10,000.
If the grandchildren born after the date of testator's death are to be admitted, then, on the basis of the grandchildren now alive, the distribution would be as follows: Margaret, $4,166.66; Muriel, $4,166.66; Harry, $4,166.66; James, $4,166.66; Alice, $8,333.33.
But suppose, after Alice has attained age thirty and she receives her share of the principal of this fund, several other grandchildren are born, as is quite possible, to what extent would the interests of the remaining grandchildren in this fund be reduced? It is quite apparent that the testator intended that the division of the corpus of this trust should be on as equal a basis as possible. He divided the principal into five portions, and said that Alice should have two and each of the other grandchildren one portion. It was not intended that Alice should have three or four times more than any other grandchild for which provision was made, nor was it intended that the three Supp grandchildren should have their shares so diminished as might ultimately result from assenting to the defendants' proposition. It is quite true that the time of distribution of the corpus of the trust *Page 253 
is postponed until the grandchildren, respectively, attain age thirty; but, in the meantime, each grandchild is entitled to the income. There is no accumulation of income, but when will we determine the members of the class entitled to the benefits of this trust if not at the death of the testator? Will it be when the oldest grandchild attains age thirty, or when the youngest grandchild attains that age, or must there be a new determination whenever and as often as each grandchild attains age thirty?
Unquestionably, the interests of the respective grandchildren in this trust fund vested at the death of the testator. VanHouten v. Hall, 73 N.J. Eq. 384; Security Trust Co. v.Lovett, 78 N.J. Eq. 445.
Are these interests subject to being divested in whole or in part by the birth of additional grandchildren after the testator's death, and may they be thus divested after partial distribution of the corpus and upon the birth of additional grandchildren after that date? It seems to me that if James is admitted, then these questions must be answered in the affirmative, but to my mind the difficulties and the inequality of the distribution of the corpus which might result from following the suggestion of the defendants, and which are plainly apparent, ought to convince anyone that the testator did not intend that any such situation should ever arise. It is quite possible that he did not have in mind the situation which has now arisen, and that if he had he would have made suitable provision therefor; and, again, the language of Lord Halsbury inEnderwick v. Tatchel is pertinent, where he says: "I so far go with the contention of the appellants here, that I think it quite possible — nay, I may go further and say I think it is probable — that if the testator had contemplated the particular event that has happened in this cause he would have provided for it. But with that single observation I am not at liberty, because an event has happened which I think has not been provided for, to conjecture what the testator would have provided if he had thought of it beforehand. I am not at liberty to disregard the application of the ordinary *Page 254 
rule of construction of every document, namely, that you must look at the whole document, and, if you can, you must read the words according to their natural and reasonable meaning."
But, as I read the testator's will, and the language which he used in designating his grandchildren who should participate in the trust fund established by the fifth clause of his will, there can be no question as to its meaning. The words used there are entirely apt and the context plain, and I cannot bring myself to any other conclusion than that in using the words "born after this date and survive me" the testator has limited the grandchildren who should participate in the benefits of this trust to those who should be alive on the date of his death, and, of course, "en ventre sa mere."
Considerable stress is put upon the argument in defendants' brief that in the case of Bailey v. Brown, 19 R.I. 669, 682;36 Atl. Rep. 581, the words "who shall survive me" were construed to mean "who shall be living after me." The argument is that the Rhode Island Case is analagous to the case subjudice, and that the same rule should apply here; that the words "survive me." in the Supp will, should be construed to mean "to live after me." I have carefully examined the Rhode IslandCase, but do not find therein any reason for applying the construction of that case to the case at bar. The language of the will there under consideration was quite distinguishable from the language of the will here involved. The clause construed there was "and if either of my said sons should die without leaving any child, who shall survive me, and live to attain the age of twenty-one years, or die under that age, leaving issue living at his or her decease, then, as to the moiety or share of him so dying in trust for the other of said sons," c. It is clear from that language that testator meant exactly what the court construed his words to mean; but another explanation of that court's decision, if one were needed, is found in the language of the opinion (36 Atl. Rep. 581 — at p. 583), where the court said: "The will in question, including the codicil thereto, is very lengthy, exceedingly *Page 255 
verbose, and, if strictly construed in all its parts, is manifestly inconsistent. It therefore becomes necessary to carefully study the same, in the light of all the facts and circumstances set out in the answer to the bill, with a view of ascertaining the scheme which the testatrix had in mind, and desired to accomplish; it being a cardinal rule of construction that the testator's intention must control, if not inconsistent with some established rule of law."
My conclusion is therefore that James L. Clayton, the infant son of James and Alice Clayton, who was born May 11th, 1924, is not entitled to participate in the benefits of this trust fund, and that, therefore, the complainant Harry L. Supp is entitled to receive from the trustee twice each year three-fifths of the income of said trust fund for the benefit of his three children, who were alive on the date of the death of the testator, until such children arrive at age seventeen, respectively.
Having determined that grandchildren of the testator born after the death of the testator are not entitled to participate in the trust, the question as to the application of the rule against perpetuities does not arise, as the trust is established for lives in being. There is no postponement of the vesting of the interests of the respective grandchildren which would be violative of the will. Trustees, c., of Jersey City v.Trustees, c., of Weehawken, 80 N.J. Law 572.
I will advise a decree in accordance with the foregoing conclusions. *Page 256